PEOPLE ex rel. APFEL v. CASEY, Commissioner of Public Safety.

(Supreme Court, Appellate Division, Fourth Department.  November 12, 1901.)

MANDAMUS—JUDICIAL ACT—COMMISSIONER OF PUBLIC SAFETY—PHYSICAL DISQUALIFICATION.

Under Laws 1900, c. 484, § 34, providing that it shall be the duty of the commissioner of public safety of the city of Rochester to provide for physical examination of all members of the park police force, and appoint all members found physically qualified members of the city police force, the determination of the physical qualifications of the persons examined is an exercise of judgment amounting to a judicial act, and the correctness of such determination cannot be reviewed by mandamus.

Appeal from special term, Monroe county.

Mandamus by the people, on the relation of Adam Apfel, against James D. Casey, as commissioner of public safety of the city of Rochester, to compel the appointment of relator to the city police force.  From an order granting the writ, respondent appeals.  Reversed.

This is a proceeding to compel by mandamus the appointment of the relator to the police force of the city of Rochester, pursuant to section 34 of chapter 484 of the Laws of 1900, which reads as follows, viz.: "It shall be the duty of the commissioner of public safety of the city of Rochester to provide police protection for the parks, parkways, the approaches thereto and the streets connecting the same.  Said commissioner of public safety shall within thirty days after this act takes effect, provide for the physical examination of all members of the existing park police force and shall appoint all members of said park police force who are found on such examination to be physically qualified for police duty, to be members of the police force of said city."  At the time of the enactment of this statute the relator, Adam

72 N.Y.S.—60

Apfel, was a member in good standing of the existing park police force of the city, having been duly appointed thereto in March, 1896, upon the certification of the local civil service commission. Shortly after the passage of the act of 1900, and in compliance with the requirements of section 34 of that act, the commissioner of public safety of the city of Rochester designated one Dr. Stapleton, who was the police surgeon of the city, to conduct the physical examination of the relator, and the same was duly made on the 17th day of April, 1900. This examination disclosed no physical deformity or disease in the relator, but it revealed the fact that he was but 5 feet 5⅝ inches in height, and weighed 164 pounds. The surgeon's report, which was in writing, stated, in substance, that the applicant was rejected on account of height; that he was undersized, and would not make up in general appearance; and the same was accompanied by this certificate, viz.:

"I hereby certify that I have this day carefully and thoroughly examined the above-named applicant, and that the foregoing is a truthful record of his examination. In my opinion, he is not well qualified physically to endure the labors and exposures and perform the duties of a patrolman.

"Rochester, N. Y., April 17, 1900.

"Surgeon to Department of Public Safety."

This report was not signed by Dr. Stapleton, but it is conceded that such omission was the result of inadvertence, and consequently no stress is laid upon that circumstance. Upon the receipt of the surgeon's report the commissioner of public safety decided that the relator was physically disqualified, and refused to appoint him upon that ground, although he did assign him to temporary duty in the city parks, under the provisions of a city ordinance authorizing him to make such designation. Thereafter the defendant, Casey, was duly appointed commissioner of public safety of the city of Rochester, and on the 12th day of November, 1900, the relator served upon such official a written notice, in which he insisted that he was qualified to serve upon the regular police force of the city, and requested that his appointment thereto be made. Such request being refused, this proceeding was instituted, and after a trial of the issues raised therein the order from which this appeal is brought was duly made.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ

P. M. French, for appellant.

Alexander Otis, for respondent.

ADAMS, P. J. The sole question litigated in this proceeding was whether or not the relator's diminutive stature was such a physical disqualification as justified the defendant in refusing to assign him to duty upon the regular police force of the city. The act of 1900 (section 34) provides that within 30 days after the same takes effect the commissioner of public safety shall provide for the physical examination of all members of the existing park police force, and shall appoint such of them as "are found on such examination to be physically qualified for police duty to be members of the police force of said city." This examination, it seems quite clear to us, calls for the ascertainment of a fact. The surgeon to whom is committed the duty of determining the question in the first instance requires the applicant to undergo a physical examination, and this may disclose the existence of some latent disease or some other bodily infirmity which would, in the opinion of the examiner, unfit the applicant for police duty, in which event it becomes his duty to so certify. In the present instance, had Apfel's examination disclosed that he was subject to heart disease, or afflicted with hernia, or that one leg was half

an inch shorter than the other, and the examiner had so certified, such certificate would certainly be the expression of a judgment upon the part of the examiner, which might have been erroneous, it is true, but one which, nevertheless, was founded upon supposed facts; and no reason occurs to us why the same is not true of the defect which was certified to. Shortness of stature may or may not be a physical disqualification for service upon the police force. Certainly, if a man was but 5 feet in height and weighed 200 pounds, there could be no question but that his physical makeup would operate as a disqualification for active police duty. And in the relator's case it seems that a height of 5 feet and 5⅞ inches was so regarded by the examining surgeon, and he so certified. Whether his judgment was well founded is not the question. It was a judicial determination, and one which was founded upon facts which were established to the satisfaction of the person rendering the same. The evidence taken upon the trial of this proceeding seems to demonstrate most conclusively the correctness of this proposition. Several persons, including city officials and police officers, were called as witnesses for the defendant, and they testified unqualifiedly that a man who was less than 5 feet and 6 inches in height was not physically qualified to render satisfactory service as a policeman, and they gave their reasons for such conclusion. Upon the other hand, however, witnesses upon behalf of the relator, including an army officer of experience, testified that such a diminutive stature as was found in the relator did not amount to a physical disqualification. Thus it will be seen that there was presented to the court a straight issue of fact, the evidence relating thereto being highly contradictory in its character, and upon such conflict the court reached a determination which was favorable to the relator; but in reaching this conclusion it was forced to determine certain controverted facts. In these circumstances it would seem to necessarily follow that the determination of the question of physical qualification was one involving the exercise of judgment; that it was, therefore, quite as judicial in its character when reached by the examining officer as it was when decided by the court; and, if so, then it was one which cannot be reviewed by mandamus. The primary office of a writ of mandamus is to command action upon the part of a person or body whose duty consists in the performance of mere ministerial acts prescribed by law. People v. Land Office Com'rs, 149 N. Y. 26, 43 N. E. 418; Same v. Barnes, 114 N. Y. 317, 20 N. E. 609, 21 N. E. 739; Same v. Common Council of Troy, 78 N. Y. 33, 34 Am. Rep. 500. In the case first above cited the distinction between ministerial and judicial acts is thus stated:

"When the law requires a public officer to do a specified act in a specified way, upon a conceded state of facts, without regard to his own judgment as to the propriety of the act, and with no power to exercise discretion, the duty is ministerial in character, and performance may be compelled by mandamus, if there is no other remedy. When, however, the law requires a judicial determination to be made,—such as the decision of a question of fact, or the exercise of judgment in deciding whether the act should be done or not,—the duty is regarded as judicial, and mandamus will not lie to compel performance."

And if we are correct in our view that the determination of the relator's physical qualification was, under the facts of this case, judicial in its nature, then, tested by the distinguishing rule above quoted, it would seem to leave no room for any other conclusion than the one above stated, viz. that the relator has mistaken his remedy. Perhaps the application of another test will make this proposition even more clearly demonstrable. In the case of People v. Common Council of Troy, 78 N. Y. 33, 34 Am. Rep. 500, the office of a writ of mandamus is thus defined:

"Where a subordinate body is vested with power to determine a question of fact, the duty is judicial, and, though it can be compelled by mandamus to determine the fact, it cannot be directed to decide it in a particular way, however clear it may be made to appear what the decision ought to be."

Now, in the present case, if the examining surgeon had refused absolutely to certify the result of his examination, he could doubtless have been compelled by mandamus to act; that is, to perform the duty which the law imposed upon him. But could he, by the same process, have been forced to decide the question of physical qualification in any particular way? Clearly not; and, if not, then a review of his action must be sought through some other medium than the one resorted to by the relator. From whatever point of view this question is considered, but one result seems obtainable, and that one is adverse to the relator's contention.

We conclude, therefore, that the order appealed from should be reversed, and the writ dismissed, but, as the question is somewhat novel, without costs to either party. All concur.