PEOPLE ex rel. SCOTT v. REID et al.

(Supreme Court, Appellate Division, First Department. December 3, 1909.)

1. PHYSICIANS AND SURGEONS (§ 5*)—LICENSE TO PRACTICE—PRESENTATION OF DIPLOMAS—"REGULARLY CONDUCTED COLLEGE"—"REGULARLY."

Laws 1907, p. 645, c. 344, § 14, now Public Health Law (Consol. Laws, c. 45 [Laws 1909, c. 49]) § 173, provides that any person actively engaged in the practice of osteopathy in the state, who presents to the Board of Regents satisfactory evidence that he is a graduate in good standing of a "regularly conducted" school of osteopathy having a certain curriculum, which facts shall be shown by a diploma, etc., shall, upon application and payment of the fee, be licensed to practice. Relator presented, upon his application for a license to practice, a diploma from a college of osteopathy, which was a stock corporation organized under the corporation laws of another state, and which had not obtained the certificate from the Secretary of State required by General Corporation Law (now Consol. Laws, c. 23 [Laws 1909, c. 28]) § 15, as a condition precedent to doing business here, and had not received permission from the Regents of the University to do business under its corporate name, or assume the name of "college," or confer diplomas or degrees, as required by University Law (Laws 1892, p. 781, c. 378) § 33, as amended, now Education Law (Consol. Laws, c. 16 [Laws 1909, c. 21]) § 1104, as a condition precedent to such acts. *Held*, that the relator's college was not a "regularly conducted college," within the statute, it not having complied with the requirements for doing business within the state as a stock corporation, or for conferring diplomas, etc.; "regularly," as used in the statute, meaning "duly," "lawfully," or "legally."

[Ed. Note.—For other cases, see Physicians and Surgeons, Dec. Dig. § 5.* For other definitions, see Words and Phrases, vol. 7, p. 6040.]

2. MANDAMUS (§ 159*)—ALTERNATIVE WRIT—NECESSITY—UNDISPUTED FACTS.

In an application for a peremptory writ of mandamus to compel the Regents of the University to issue a license to relator to practice osteopathy upon presentation of a diploma of graduation from a certain college, where all the facts as to the status of relator's college were uncontroverted, the question of whether it was a "regularly conducted college of osteopathy," within Laws 1907, p. 645, c. 344, § 14, now Public Health Law (Consol. Laws, c. 45 [Laws 1909, c. 49]) § 173, requiring the granting of a license upon presenting a diploma from such a college, was one of law, so that an alternative writ will not issue to determine that question, upon deciding that it was not such a college.

[Ed. Note.—For other cases, see Mandamus, Dec. Dig. § 159.*]

3. MANDAMUS (§ 87*)—PURPOSE OF WRIT—MINISTERIAL ACTS—STATE BOARDS—UNIVERSITY REGENTS.

The action of the Regents of the University in denying an application for a license to practice osteopathy made under Laws 1907, p. 645, c. 344, § 14, now Public Health Law (Consol. Laws, c. 45 [Laws 1909, c. 49]) § 173, providing that any person actively engaged in the practice of osteopathy, who presents to the Board of Regents satisfactory evidence that he is a graduate in good standing of a regularly conducted school of osteopathy having a certain curriculum, which facts shall be shown by a diploma,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

etc., shall be licensed to practice, is administrative or ministerial, and reviewable by mandamus, and not judicial, so as to be reviewed by certiorari.

[Ed. Note.—For other cases, see Mandamus, Dec. Dig. § 87.*]

Appeal from Special Term, New York County.

Application by the People, on the relation of Henry W. Scott, against Whitelaw Reid, Chancellor, and others. From an order denying a motion for a peremptory writ, relator appeals. Affirmed.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

A. S. Gilbert (Julius M. Mayer, on the brief), for appellant.
Frank B. Gilbert, for respondents.

LAUGHLIN, J. On the 8th day of October, 1907, the relator filed an application in writing with the Board of Regents of the state of New York for a license to practice osteopathy in the city of New York. The application consisted of a verified petition and a certificate of character signed by two practitioners of osteopathy; and he inclosed therewith a photograph of himself and a diploma from the Old Physio-Medical College, Department of Osteopathy, and a check for $10 for the license fee. The petition was apparently on a blank application furnished by the Board of Regents for that purpose, and it was therein stated, among other things, in answer to questions, that on the 4th day of January, 1907, he received the degree of D. O., meaning Doctor of Osteopathy, from the Old Physio-Medical College, Department of Osteopathy, and that this college was incorporated under the laws of the state of West Virginia, but that the college was in the city of New York; that it was in good standing as a college of osteopathy; that he attended lectures on osteopathy at this college during all the months of the years 1905 and 1906, excepting July and August. Thereafter he received a communication from one Wheelock, chief of the examination division of the Department of Education of the state, under date of October 17, 1907, returning his check and stating that the "Old Physio-Medical College," of which the relator in his application stated that he was a graduate, "is not considered by us a regular organized school of osteopathy under the statute."

The application was based on section 14, c. 344, p. 645, Laws 1907, now section 173 of the public health law (chapter 45 of the Consolidated Laws [Laws 1909, c. 49]), which, so far as material, provided as follows:

"It is further provided that any person who shall be actively engaged in the practice of osteopathy in the state of New York on the date of the passage of this act and who shall present to the Board of Regents satisfactory evidence that he is a graduate in good standing of a regularly conducted school or college of osteopathy within the United States which at the time of his or her graduation required a course of study of two years or longer, including the subjects of anatomy, physiology, pathology, hygiene, chemistry, obstetrics, diagnosis and the theory and practice of osteopathy, with actual attendance of not less than twenty months, which facts shall be shown by his or her diploma and affidavit, shall upon application and payment of ten dollars be granted,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

without examination, a license to practice osteopathy, provided application for such license be made within six months after the passage of the act."

It appears by affidavits in opposition to the petition for the writ, among other things, that this college in which the relator studied osteopathy, and from which he was graduated and received his degree, was not incorporated under the laws of this state, and has not been given permission by the Regents of the University of the state of New York to transact business under the name "Old Physio-Medical College," or to assume the name "college," or to confer diplomas or degrees pursuant to the provisions of section 33 of the university law (chapter 378, p. 781, Laws 1892, as amended) now section 1104 of the education law, which is chapter 16 of the Consolidated Laws (Laws 1909, c. 21); that this college is a stock corporation, organized under the laws of the state of West Virginia, with authority to teach, among other things, osteopathy, and to confer degrees therefor; and that it has not obtained a certificate from the Secretary of State, pursuant to the provisions of section 15 of the general corporation law, now chapter 23 of the Consolidated Laws (Laws 1909, c. 28), authorizing it to do business within this state.

It thus appears that the relator is a graduate of a college which teaches osteopathy, incorporated under the laws of a sister state, but having its college within this state and conducting it within our jurisdiction, in violation of two statutes enacted by the Legislature of this state.   Notwithstanding these facts, the learned counsel for the relator contends that the evidence presented should have been deemed satisfactory by the Board of Regents that the relator "is a graduate in good standing of a regularly conducted school or college of osteopathy within the United States."   Many immaterial issues are presented by the application and answering affidavits, and the relator claims the right in any event to an alternative writ, for the purpose of having the uncontroverted question of facts determined as to whether or not he is a graduate in good standing of a regularly conducted college or school of osteopathy within the United States.

We are of the opinion that the uncontroverted evidence makes the question as to whether this was a school or college regularly conducted, within the purview of the statute, one of law.   It is not controverted that the college is a stock corporation, incorporated under the laws of the state of West Virginia, with capital stock of the par value of $25,-000, that its college is in the city of New York, and that it has not received authority from the Secretary of State or from the Regents of the University of the state to conduct its college within this state. These are the facts which we regard as material, and, as matter of law, they, in our opinion, sustain the action of the Regents of the University of the state.   The Legislature evidently intended to provide for licensing osteopaths who are graduates in good standing of a school or college of osteopathy duly organized, existing, and conducted under the laws of any state or territory within the United States; but it was not intended to provide that graduates of schools or colleges of osteopathy conducted within the United States, but without the sanction of the law of the state in which they are conducted,

which is presumed to provide for proper supervision, should be licensed to practice osteopathy. Surely the Legislature did not intend to recognize a school or college which was being conducted in violation of the laws of this state, nor did it intend to recognize a school or college conducted in any other state or territory in violation of the laws of that state or territory.

It will not do to give to the words "regularly conducted school or college" the limited meaning for which the learned counsel for the relator contends, viz., that they have reference only to the regularity of the sessions and continuity of the course of study at the school or college. The word "regularly," as used in legal proceedings and statutes, has a much broader meaning, and is ordinarily used in the sense of "duly," which means "lawfully," or "legally" (24 Am. & Eng. Encyc. of Law, 243); and such, we think, is the meaning that the Legislature intended by the use of those words in the provision of the statute quoted. The relator, therefore, was not entitled either to a peremptory or to an alternative writ of mandamus.

We are of opinion, however, that the learned court placed the denial of the application on an erroneous ground. It appears that the motion was denied on the ground that certiorari, and not mandamus, is the proper remedy. If the relator were entitled to any relief in the premises, we think that mandamus, and not certiorari, would be the proper remedy. The action of the Regents of the University of the state, in considering and denying an application for a license to practice osteopathy under this statute, is not judicial, in the sense that it may be reviewed by a writ of certiorari; but its nature is executive, administrative, or ministerial, in the sense in which those terms are used by the courts in determining whether official action is reviewable by certiorari or by mandamus, or whether there may be any review at all. People ex rel. Kennedy v. Brady, 166 N. Y. 44, 59 N. E. 701; People ex rel. Schau v. McWilliams, 185 N. Y. 92, 77 N. E. 785; Matter of Walker v. Maxwell, 68 App. Div. 196, 74 N. Y. Supp. 94; People ex rel. McNulty v. Maxwell, 123 App. Div. 591, 108 N. Y. Supp. 49; Matter of North Am. Mercantile Agency Company, 124 App. Div. 657, 109 N. Y. Supp. 165; People ex rel. E. C. T. Club v. State R. Co., 190 N. Y. 31, 82 N. E. 723. See, also, Matter of Bandel v. Dept. of Health, 193 N. Y. 133, 85 N. E. 1067, 21 L. R. A. (N. S.) 49; People ex rel. Lodes v. Dept. of Health, 189 N. Y. 187, 82 N. E. 187, 13 L. R. A. (N. S.) 894; People ex rel. Wooster v. Maher, 141 N. Y. 330, 36 N. E. 396; People ex rel. Harris v. Commissioners, 149 N. Y. 26, 43 N. E. 418.

It follows, therefore, that the order should be affirmed, with $10 costs and disbursements. All concur.