In the Matter of the Application of MARIA BARRESI, Respondent, for a Mandamus Order Directed to HERMAN M. BIGGS, as Commissioner, New York State Department of Health, Appellant.

Third Department, September 27, 1922.

**Public health — State Sanitary Code — State Commissioner of Health may. in his discretion, refuse to grant license to practice midwifery — mandamus — alternative mandamus order directing State Commissioner of Health to renew license to practice midwifery, improperly granted.**

Under the State Sanitary Code, the State Commissioner of Health may, in his discretion, refuse to grant a license to practice midwifery, where it appears that the applicant while previously a licensee had performed criminal abortions.

Under the circumstances, an alternative mandamus order directing the commissioner to renew a license issued to the relator or show cause why he should not do so was improperly granted.

APPEAL by the defendant, Herman M. Biggs, from an order of the Supreme Court, made at the Albany Special Term and entered in the office of the clerk of the county of Albany on the 8th day of March, 1922, granting an alternative mandamus order directing him to renew for the calendar year 1922 a midwifery license issued to the respondent or show cause why he should not do so.

*Charles D. Newton, Attorney-General [John J. McCall of counsel],* for the appellant.

*Salvador J. Capecelatro,* for the respondent.

H. T. KELLOGG, J.:

The record on appeal discloses that the State Sanitary Code, which was adopted by the Public Health Council pursuant to power conferred by section 2-b of the Public Health Law (as added by Laws of 1913, chap. 559), contains in chapter 4 provisions forbidding the practice of midwifery by any person other than a duly licensed physician, unless such person shall have received a license so to practice from the State Commissioner of Health; that a license to practice midwifery may be granted only for the period of the current calendar year in which it is issued; that every applicant licensed must be over twenty-one years of age; that she must be able to read and write; that she must be cleanly in appearance and habits; that she must possess a diploma from a recognized school for midwives, or have attended not less than fifteen cases of labor under instructions from a licensed physician. It also discloses further provisions of the State Sanitary Code requiring an applicant to " present other evidence satisfactory to the State Commissioner of Health of her qualifications," and to " present evidence satisfactory to the State Commissioner of Health of good moral character, vouched for by at least two reputable citizens."

The relator pursued a course of study in the University of Messina, Italy, for the practice of midwifery, and received a diploma from that institution. She thereafter practiced midwifery in Italy until the fall of 1919, when she emigrated to the United States. In September, 1920, a license was issued to her by the State Commissioner of Health to practice midwifery in the city of Utica, N. Y., for the remainder of the year 1920. In January, 1921, a further license was issued to her permitting her to practice during the year 1921. In January, 1922, the relator made a further application for a license to practice during the year 1922. Upon such application she filed affidavits tending to prove that her moral character was good. The State Commissioner of Health was at the time in possession of certain information indicating that the relator was not a suitable person to practice midwifery. Among other things, he had been informed from numerous sources that the relator had, while enjoying licenses previously issued, performed operations of abortion. He had been particularly informed of the presence in a certain hospital in the city of Utica of a patient who was suffering from the after effects of an operation of abortion. That patient had stated that this relator had per-

formed the operation. The Commissioner had also been advised of certain facts tending to prove that the relator possessed certain surgical instruments, the possession or use of which by midwives was wholly prohibited. On the strength of this information the Commissioner of Health declined to issue to the relator a license to practice midwifery during the year 1922.

The instances are numerous in which administrative officers, *empowered* but not expressly *required* by statute to grant licenses and certificates or to make appointments and designations, have been held to possess an absolute discretion not to grant or make them. In the case of *Ex parte Persons* (1 Hill, 655) it was held that a town board of excise, empowered by statute to grant licenses to keep taverns, could not be commanded by mandamus to issue such licenses to persons concededly suitable for the purpose. In *People ex rel. Dorr* v. *Thacher* (42 Hun, 349) it was held that the mayor of Albany, under an ordinance which provided that he " may issue licenses " to give musical entertainments on the payment of a fee of $25, possessed discretion not to issue them, and could not be compelled by mandamus to grant the relator a license to give musical entertainments in his saloon. In *Matter of Abrams* v. *Board of Town Auditors* (45 Hun, 272) it was held that town auditors, who were given by statute the power to grant licenses to establish oyster beds in certain bays, could not be required by mandamus to issue a license to the relator. In *People ex rel. Lockwood* v. *Saratoga Springs* (54 Hun, 16) it was held that the relator, who, as a Civil War veteran, was entitled to preference in appointment to public office, could not require the trustees of a village to appoint him to the vacant office of superintendent of public works, for the reason that the trustees were the sole judges of his fitness therefor. In *People ex rel. Worth* v. *Grant* (58 Hun, 455) it was held that the mayor of New York, who was by law empowered to grant licenses for the giving of concerts on the payment of a certain sum, could not by mandamus be compelled to issue to the relator a license to give such concerts on his premises. In *People ex rel. Francis* v. *Common Council* (78 N. Y. 33) the relator sought by mandamus to compel the designation of his newspaper for certain city advertising in the city of Troy under a law which required the designation for that purpose of newspapers having the largest circulation in the city. Although the proof indicated that the relator's newspaper did have the largest circulation of any newspaper in the city of Troy a mandamus was refused. In *People ex rel. Schwab* v. *Grant* (126 N. Y. 473) the mayor of the city of New York refused to the relator a license to conduct auctions within the city. The law merely provided

that " the mayor shall have authority to grant licenses to any person engaged in and carrying on the business and occupation of an auctioneer " upon the filing of a certain bond. The relator had filed the required bond. An alternative writ of mandamus was denied to relator on the ground that the discretion of the mayor to grant or withhold a license was not subject to compulsion. In *Matter of Armstrong* v. *Murphy, No. 1* (65 App. Div. 123) it was held that a law merely empowering the police department of New York city to grant theatrical licenses upon the payment of a certain sum vested the department with a discretion which was not subject to control by mandamus. In *People ex rel. Apfel* v. *Casey* (66 App. Div. 211) the relator was entitled to appointment as policeman if physically qualified. He was rejected as not thus qualified on the sole ground that his height was not greater than five feet and five and seven-eighths inches. It was held that the appointing board possessed discretion to refuse his appointment on this ground and that mandamus did not lie. In *People ex rel. Scott* v. *Reid* (135 App. Div. 89) it was held that the issuance of a license to practice osteopathy could not be compelled by mandamus. In *People ex rel. McNulty* v. *Maxwell* (123 App. Div. 591) it was held that the relator could not, by mandamus, compel the issuance to her of a certificate that her experience as a teacher was equal to that of a teacher in a higher grade. In *People ex rel. Goldenkoff* v. *Albany Law School* (198 App. Div. 460) it was held that a student of a law school who had been expelled as an undesirable and unfit scholar, could not procure reinstatement through the agency of an alternative writ of mandamus.

It was said by RUGER, Ch. J., in *People ex rel. Schwab* v. *Grant* (*supra*): " A power to grant a privilege to one is inconsistent with the possession on the part of another of an absolute right to exercise such privilege. The requirement that a person must secure leave from some one to entitle him to exercise a right, carries with it, by natural implication, a discretion on the part of the other to refuse to grant it, if, in his judgment, it is improper or unwise to give the required consent."

The State Commissioner of Health was *empowered* but not *required* by any provision of the State Sanitary Code to grant licenses to practice midwifery. No person other than a physician was authorized to practice midwifery unless such a license were obtained from him. This requirement, as in the *Schwab* case, carried with it by natural implication a discretion on the part of the Commissioner to refuse to grant a license if, in his judgment, it was " improper or unwise to give the required consent." The right of the administrative officer in this instance to refuse licenses is made more apparent

than a similar right on the part of the various officers in the cases cited by the particular provisions of the State Sanitary Code which require that the qualifications and moral character of an applicant for a license must be " satisfactory to the State Commissioner of Health." Certainly if the public good demands, as in the cases cited, that administrative officers be vested with plenary power to determine the fitness of applicants to conduct taverns, to give theatrical entertainments, to conduct auctions, to practice osteopathy, to become policemen and superintendents of public works, then the discretion of the State Commissioner of Health to reject as unfit an applicant for a license to practice midwifery, a profession which offers convenient opportunity for criminal practices, ought also to be plenary and free from judicial review or compulsion. We think that the Commissioner of Health, having in his possession information to the effect that the relator, while previously a licensee, had performed criminal abortions, was wholly within his rights in refusing to her a license to practice midwifery.

Counsel for the relator argues that an order of alternative mandamus properly lies to determine the fact whether the relator had been guilty of the offenses which the information before the Commissioner of Health indicated that she had committed. His argument must proceed upon the theory that the relator, if she had not committed an abortion, was entitled as a matter of right to the license applied for. That argument is reducible to the absurd contention that the Commissioner must supply the opportunity to commit an abortion to every technically qualified person who has not already committed one. We think it sufficient that the Commissioner was informed that the relator had been guilty of improper conduct and violations of the rules laid down by the State Sanitary Code, and that a determination in favor of relator in respect to the charges before the Commissioner would not in the least affect the right of the Commissioner to deny her a license. Therefore, we hold that the order was improperly granted.

The order should be reversed and the application dismissed, without costs.

Van Kirk, J., concurs; Kiley, J., concurs in result; Cochrane, P. J., not voting.

Hinman, J.:

The petitioner has not established a case in mandamus. She had no vested right to practice as a midwife in the State of New York. Her profession is so closely allied to the practice of medicine that the Legislature could, if it desired, prohibit the practice of mid-

wifery except to those licensed to practice medicine. Her sole authority to practice as a midwife must be based upon full compliance with the law. Realizing its importance to human life and health the Legislature has invested the Public Health Council and the State Commissioner of Health with authority to regulate the practice of midwifery. The State Commissioner of Health has been invested with authority to pass upon the technical qualifications of the applicants and also upon the character of the applicants. While the petitioner appears to have the technical qualifications, in that she possesses a diploma from a recognized school for the teaching of midwifery, the regulations require her to " present evidence satisfactory to the State Commissioner of Health of good moral character, vouched for by at least two reputable citizens." (State Sanitary Code, chap. 4, reg. 5, subd. e.) The presentation of affidavits of two reputable citizens vouching for her good moral character does not completely satisfy this regulation. That is only the minimum requirement. The ultimate requirement is that the evidence shall be " satisfactory to the State Commissioner of Health." This involves on his part the exercise of his judgment and discretion. In this case he was not satisfied as to the moral fitness of the applicant.

At the time the petitioner's application for license was passed upon, the Commissioner had before him official reports from the inspectors of his department and others officially connected with his department, relating to the conduct of the petitioner. These reports were a part of his official files. The substance of these reports was such that the action of the Commissioner was not only justifiable but it would have been grossly improper for him to have granted the license in the absence of at least a denial or satisfactory explanation of the conduct criticized by his inspectors.

Concededly the petitioner made no attempt whatever to satisfy the Commissioner by refutation or explanation of the specific charges of misconduct now made by the Commissioner and set forth in the affidavit of his deputy in the record before us. The application for the license and the two affidavits as to good moral character are not included in the record but there is no pretense that the petitioner ever took the trouble to ask what information was in the possession of the State Commissioner of Health relative to her conduct as a midwife, or what specific instances of violation of the regulations were charged against her, or even what regulations had been violated.

Having no knowledge as to what rules were claimed to have been violated or in what respects or instances she was deemed to have violated the same, her general denial that she ever violated

any of such rules or regulations must be treated as her mere conclusion. The situation that we find before us is in effect a denial which in no sense meets the allegations of the answering affidavit of the Deputy Commissioner of Health and which stand before us uncontroverted except by a sham denial. We are asked to sustain an alternative order of mandamus subjecting the Commissioner of Health to an inquest as to whether he has acted arbitrarily, when in fact and concededly the Commissioner has never been called upon to pass upon the issues raised here for the first time.

How can we say what the determination of the Commissioner would have been if, having asked for particulars as to the rules and regulations deemed to have been violated and as to the specific charges of misconduct laid against her, she had presented proofs or explanation to meet those specific charges? In petitioning for an order of mandamus and after receiving such specific information in the answering affidavit of the Deputy Commissioner of Health, she did not even request permission of the court to file reply affidavits to meet the specific charges there raised. Her counsel apparently was content to rest her case upon the claimed right to a hearing which he had never asked for and upon her general denial in advance of any knowledge on her part of the specific grounds upon which the Commissioner had acted. The allegations set forth in the affidavit of the defendant in opposition to the application not having been controverted by the petitioner, stand admitted. The right to the order of mandamus must be determined upon the assumption that these averments in the opposing affidavit are true. The proceeding in this form is in the nature of a demurrer to the facts set up by the defendant. (*People ex rel. City of Buffalo* v. *N. Y. C. & H. R. R. R. Co.,* 156 N. Y. 570.)

It follows, therefore, that the alternative mandamus order should be reversed and the proceeding dismissed, on the ground that the petitioner has failed to establish a *prima facie* case of arbitrary action on the part of the State Commissioner of Health, within such authorities as *People ex rel. Lodes* v. *Department of Health* (189 N. Y. 187), relied upon by the petitioner. The action of the State Commissioner of Health cannot be considered a revocation of the license. The petitioner's license had expired. Under regulation 8 of chapter 4 of the State Sanitary Code relating to midwifery, the term of the license is " only during the current calendar year in which such license is issued." In the absence of any regulation setting forth the requirements for a renewal at the expiration of the year for which a license has been granted, the implication is

that a new license may be granted upon compliance with the regulation requirements as to the initial license. In no sense can the refusal to grant a new license be considered a revocation of the license previously granted within the meaning of regulation 9 of chapter 4 of the State Sanitary Code which provides for an opportunity to be heard on the part of a licensee before revocation. One cannot revoke a license which has already expired by its own limitations. Therefore, the petitioner was not denied a rightful hearing within the meaning of regulation 9 of chapter 4 of the State Sanitary Code. The remedy of the petitioner is to apply again for a license, which right is not affected by this decision.

VAN KIRK, J., concurs.

Order reversed, and application dismissed, without costs.