In the Matter of the Application of MAX SIEGEL, Petitioner, Appellant, for an Order against THOMAS J. MANGAN and Others, Constituting the Board of Regents of the University of the State of New York, and FRANK P. GRAVES, as Commissioner of Education of the State of New York, Respondents.

Third Department, January 17, 1940.

*George G. Lake* [*Clayton R. Lusk* of counsel], for the appellant.

*Ernest E. Cole*, for the respondents.

FOSTER, J. This is a proceeding brought pursuant to the provisions of article 78 of the Civil Practice Act, to review the action of the Board of Regents in reconsidering the application of petitioner for a license to practice as an architect after it had previously passed a resolution to grant such license.

Petitioner was not licensed to practice as an architect, although in 1928 he was granted a license as a professional engineer, which permitted him to plan, design and supervise the erection and alteration of buildings, although he could not use the title of architect. (Education Law, § 1476, subd. 2, as added by Laws of 1929, chap. 572.) The record indicates, and there seems to be no controversy

over the fact, that he has had, aside from some academic training, a practical experience of considerable proportions.

In October, 1938, he applied to the Board of Regents for a license to practice as a registered architect under the provisions of section 51 of the Education Law. It is agreed by the contesting parties that the Regents have the power to grant a license without requiring an examination, and the statute sustains this proposition. (Education Law, § 51, subd. 2.)

On November 16, 1938, the Regents took the following action on petitioner's application: " Voted, That under the provisions of Section 51 of the Education Law, Max Siegel, Jamaica, N. Y., be granted a license to practice as architect in the State of New York." Petitioner was notified of this action and he forwarded an application and license fee. A license was prepared by the Department of Education and forwarded to the State Board of Examiners of Architects for signature, although ordinarily the license would be issued by the Department. (Education Law, § 1479, subd. 1.)

Appellant contends that there is no provision of law requiring or permitting the State Board of Examiners of Architects to sign a license, and points to subdivision 1 of section 1479 of the Education Law as requiring the Department of Education to issue the same. This section, however, deals with the results of examinations as reported by the Board of Examiners to the Department, and it is at least doubtful if it applies to direct action by the Regents. But assuming the section does apply, it provides in part: " The Department shall, *unless it deems other procedure advisable,* issue a license to every person certified by the Board as entitled to receive it." There is nothing in such language prohibiting the Department from establishing a practice of having licenses signed by the board of examiners. Respondents claim that the procedure was an established practice.

The board of examiners refused to sign the license and returned it with a letter dated January 6, 1939, which stated in substance that petitioner had been before the board of examiners in 1931 and had been denied admission to the examination on the ground that his application proved that he had been practicing illegally; and also that board failed to find anything in the law that would authorize the Regents to exempt a candidate from examination.

Despite its apparent disagreement with the board's construction of its legal powers the Regents held the matter until April 21, 1939. At a meeting on that date it passed the following resolution; " Voted, that the action taken by the Regents on November 16, 1938, granting to Max Siegel a license to practice as an architect in the

State of New York, be reconsidered, and the application laid on the table until the May meeting." An order was issued, directing Siegel to appear before the Regents on May 19, 1939, and show cause why the resolution, dated November 16, 1938, should not be rescinded or modified. This proceeding was commenced May 6, 1939, by petition and notice of motion made returnable at the Rensselaer Special Term. The Special Term denied the motion on the ground that until a license was actually issued the Regents had power to reconsider the action originally taken.

I think this ruling was correct. The action of the Regents in considering an application for a license to practice a profession is not considered judicial in its nature, but rather executive, administrative or ministerial, and may in certain cases be subject to review (*People ex rel. Scott* v. *Reid,* 135 App. Div. 89), although only where the ultimate decision is arbitrary, unfair or capricious. (*Matter of Erlanger* v. *Board of Regents of University of State of New York; Matter of Levi* v. *Regents of University of State of New York,* 256 App. Div. 444; affd., as to *Matter of Levi,* 281 N. Y. 627.)

But in any event the Board of Regents is not bound by its act, nor can that act be reviewed, until it has become final. The rule that " public officers or agents who exercise judgment and discretion in the performance of their duties may not revoke their determinations nor review their own orders once properly and finally made " (*People ex rel. Finnegan* v. *McBride,* 226 N. Y. 252), is not applicable unless the original resolution was final.

In this connection the fact that the Department of Education was to issue the license, or the Commissioner of Education was to sign it, is of no more significance than if the members of the Regents were to sign it. All are a part of the Department of Education. As a matter of fact and law the Board of Regents is the head of the Department. (Education Law, § 20.) The action of the Department is in effect, therefore, the action of the Regents. They cannot be considered completely separate entities so that the Board of Regents is foreclosed from a reconsideration of its resolution where the resolution is not carried out and completed by the actual issuance of the license.

Assume that the Regents issued the license and its members were required to sign it. It can hardly be assumed that prior to the actual issuance of the license it would be irrevocably bound by its own resolution. No different principle should be applied where the duty of issuance is confided to a subordinate part of the same body. Petitioner acquired no vested right merely from the passage of the original resolution, and the action of the Regents would not have become final until the license was actually issued.

The order appealed from should be affirmed.

HILL, P. J., HEFFERNAN and SCHENCK, JJ., concur; CRAPSER, J., dissents.

CRAPSER, J. I dissent. It seems to me that under the case of *Matter of Tremaine* v. *Board of Supervisors of Tioga County* (251 App. Div. 198; affd., 278 N. Y. 496) the Board of Regents had no authority, once having exercised its power in granting a license to the petitioner, to revoke or to modify its action, and I, therefore, vote to reverse the final order appealed from and to grant the application of the petitioner, with costs.

Order affirmed, without costs.