In the Matter of BARTON TRUCKING CORP., Appellant, against BERNARD J. O'CONNELL, as Commissioner of Licenses of the City of New York, Respondent.

First Department, December 16, 1958.

*Irving Bick* for appellant.

*Edward A. Doberman* of counsel (*Seymour B. Quel* with him on the brief; *Charles H. Tenney, Corporation Counsel,* attorney), for respondent.

BREITEL, J. P. Petitioner, a trucking company, appeals from the dismissal of its petition in an article 78 proceeding which sought to annul the action of the New York City Commissioner of Licenses in refusing to grant it a public carting license. The principal administrative ground for refusing the license was petitioner's unfitness to qualify for a license as evidenced by the conviction of one of its principals, James Plumeri, for extortion in 1937.

The order should be reversed, the petition granted to the extent of annulling the determination by the commissioner, and the matter remanded to the commissioner for the purpose of reconsidering the application, taking such additional evidence as he may be advised, and redetermining the application in accordance with the views expressed in this opinion.

The question in this case is whether the Commissioner of Licenses, under the city statutes which apply to him, has the power to consider the character of an applicant for a cartman's license, and whether, if he has such power, the information adduced supported his determination.

The City Commissioner of Licenses has a number of powers to grant licenses with respect to various callings and installations used in certain businesses (N. Y. City Charter, § 773 *et seq.*; Administrative Code of City of New York, § 773a–1.0 *et seq.*; § B32–1.0 *et seq.*). Among these powers is that of granting licenses to public cartmen, a public cart being defined as any vehicle " which is kept for hire or used to carry merchandise, household or office furniture or other bulky articles within the city, for pay " (Administrative Code, § B32–92.0 *et seq.*). The statute provides variable license fees and regulates the charges that may be imposed by the public cartman for his services. There is then provision for the handling of violations of the regulations. Beyond these provisions there are no requirements of any kind for public cartmen except the general provision applicable to all licensees that they must be citizens (Administrative Code, § 773a–1.0). The bareness of the statutes with regard to the qualifications of a public cartman before being entitled to a license raises critically the question whether the commissioner has any discretionary power to require any additional qualifications not expressed in the statutes.

It is now well-settled law that a legislative body may delegate to an administrative officer, charged with the obligation of granting licenses, the power to exercise discretion with regard to the qualifications of licensees, the use to which the licenses may be put, and the elements of public convenience that must be served before licenses may be granted (*Matter of Small* v. *Moss,* 279 N. Y. 288; *Matter of Seignious* v. *Rice,* 273 N. Y. 44; *Matter of Elite Dairy Products* v. *Ten Eyck,* 271 N. Y. 488). It is equally well settled, however, that such discretionary powers must be expressly delegated by the legislative body or be delegated by such clear implication that the legislative intention is clear, and such delegation must then be accompanied, expressly or by clear implication, by standards by which the administrative official is to be guided (*Packer Collegiate Inst.* v. *University of State of New York,* 298 N. Y. 184; cf. *Matter of Fink* v. *Cole,* 302 N. Y. 216, 225; *Matter of Small* v. *Moss,* 279 N. Y. 288, *supra*; *Matter of Savage* v. *Commissioner of Licenses,* 3 A D 2d 717; Ann. —, Vesting Discretion in Public Officials, 92 A. L. R. 400).

The distinction here is between legislative and quasi-judicial functions lodged in the administrator. Discretion may be delegated to the administrator but only when it is circumscribed by such standards as will delimit the administrative field of action. The authority to ascertain and impose policy is a legislative function and can be exercised only by the Legislature. " This

court has repeatedly pointed out that the courts may not invade the field of discretion conferred by law upon an administrative officer. It has also pointed out that such field of discretion must be defined by the Legislature. The Legislature must set bounds to the field, and must formulate the standards which shall govern the exercise of discretion within the field. Without the second rule as a corollary to the first rule there would be no effective restraint upon unfair discrimination or other arbitrary action by the administrative officer." (*Matter of Small* v. *Moss*, 279 N. Y. 288, 298–299, *supra*.)

What has occasionally caused confusion is the failure to distinguish certain special circumstances in which an administrative official charged with the duty of granting licenses may nevertheless deny the license even though delegations and standards of the kind just referred to have not been expressly provided. Thus an administrative official is not obliged to, and should not, grant a license which would result in a use of the license in violation of law, either under statute or by well-recognized decisional rules (*Matter of Dr. Bloom Dentist, Inc.*, v. *Cruise*, 259 N. Y. 358; *Matter of Barresi* v. *Biggs*, 203 App. Div. 2; *People ex rel. Cumisky* v. *Wurster*, 14 App. Div. 556). Another such circumstance which allows the administrative official, and, indeed, requires him, to abstain from granting a license, is where the use would patently deny a public policy for which the licensing statute is evidently, from its history or from its face, the implement of execution (*Matter of Rosenberg* v. *Moss*, 296 N. Y. 595; *People ex rel. Schwab* v. *Grant*, 126 N. Y. 473; *Matter of Rudhlan Amusement Corp.* v. *Geraghty*, 146 Misc. 308). It has been well said that the licensing official is not in all cases supposed to act as an automaton and he must take cognizance of the purpose to which the license is to be put and ascertain whether the resultant use will be illegal or in violation of public policy (*Matter of Doctor Bloom Dentist, Inc.* v. *Cruise*, 259 N. Y. 358, 364, *supra*). All of this, however, is quite different from reading into the licensing power the right to pass on qualifications in the absence of specific delegation.

None of the provisions of the statutes applicable to public cartmen, nor any legislative history which has been made available, suggest any such broad sweep for the cartman licensing statutes which would embrace the broad delegation the commissioner has here assumed. Notably, when one considers the other occupations and installations subject to the commissioner's licensing power there are many instances where detailed qualifications are prescribed. Or, in other instances, there are statutory sequences or a statutory history associated with such

sequences which demark an implied power and duty to impose specific qualifications (cf. *People ex rel. Schwab* v. *Grant, supra*). Thus, for example, the situation here is not like that which obtains with regard to the licensing of theaters. There the history of the relevant statutes makes it quite clear that the purpose was more than merely to license for purposes of identification, collection of revenue, or control of the licensees' activities under specific regulations governing their conduct (see, e.g., *Matter of Rudhlan Amusement Corp.* v. *Geraghty*, 146 Misc. 308, *supra* [SHIENTAG, J.]). On the contrary, the statutes applicable to public cartmen suggest licensing only for the several purposes last specified, namely, identification, collection of revenue, and control of the stipulated fees chargeable to the public.

On the preceding analysis the Commissioner of Licenses would have no discretion to withhold licenses in the case of public cartmen on the basis of general character and fitness of the applicant or for other arrogated qualifications. Always in the forefront are principles in this area of administrative law that— " The Legislature is free to choose among conflicting considerations, and mould the law according to its own will subject only to constitutional restrictions. It cannot delegate the same freedom of choice to an administrative officer. There it must erect guide posts which will enable the officer to carry out the will of the Legislature." (*Matter of Seignious* v. *Rice*, 273 N. Y. 44, 50, *supra*.)

Now, it is discernible what the Commissioner of Licenses and Special Term apprehended with regard to this particular applicant. There was the conviction for extortion of one of its officers in 1937. In addition he had a long record of old arrests. Another officer had a record of an arrest dating back to 1939.[*] The 1937 extortion conviction was in connection with garment trucking racketeering. The applicant is engaged in the garment trucking business. The garment industry, and particularly the trucking aspect of it, has been a continuing source of concern to law enforcement officials in this community. Obviously, the applicant, by reason of the early history of its principals, was regarded as unfit or as presenting a great risk of unfitness to function as a licensed public cartman in the garment trucking business. The commissioner may be right. But in the absence of a power delegated to him in the statute, together with standards that would guide him in the exercise of that power, he may not arrogate it (*Matter of Larkin Co.* v. *Schwab*, 242 N. Y. 330, 335; *Matter of Lyons* v. *Prince*, 281 N. Y. 557). Indeed, because

---

[*] These criminal records were disclosed by the applicant, so there is no issue in the case of false application.

of the circumstances present, this case may suggest the desirability of prompt legislative remedy; but those circumstances may not serve to enlarge the powers of the commissioner under the present statutes.

In discussing the rule that a licensing official is not narrowly limited to being an automaton, there may still be some leeway for the commissioner. If there were some evidence or some supportable finding that the applicant had been engaged in illegal activities immediately or proximately prior to the making of the application, or some similar showing that the applicant was likely to use its license for illegal purposes, then, of course, the commissioner, under principles earlier discussed, might have the power to withhold the granting of the license. But there was no such showing here. All that appears were a conviction of more than two decades ago and a number of arrests which resulted in dismissals of the criminal proceedings.

The last discussion also brings us to a question, now rendered academic but nevertheless worthy of comment. Assuming that the commissioner had power to pass upon the character and fitness of the applicant, as distinguished from prospective illegal use of a license, and in that context to consider a past criminal record, the evidence before him was utterly insufficient to sustain his conclusion of present unfitness. An old conviction and some old arrests, without more, does not establish unfitness. Assuming, again, that the commissioner had the power to consider character and fitness, he would have had a burden, even though it is a difficult one, to establish such deficiency of character and fitness. Even with a delegated power and the presence of legislative standards, arbitrary judgment or conclusions based on conjecture would not suffice (*Matter of Elite Dairy Products Corp.* v. *Ten Eyck*, 271 N. Y. 488, *supra*).

The point last discussed, of course, is a matter quite different, as has already been suggested, from finding that the applicant is likely to engage in illegal activities if a license is granted, and if that finding is based on recent or continuing activities. Subtle though the difference may be, there is nevertheless a real difference between showing that one has too poor a character or record to be trusted with certain responsibilities, and showing that regardless of proof of previous general character or record one's immediate or continuing activities are likely to result in illegal use of the license if granted (*Matter of Barresi* v. *Biggs*, 203 App. Div. 2, *supra*).

Belatedly, the commissioner has added as a makeweight argument to support his determination the contention that he was entitled to deny the license on the ground that the applicant had

already been engaged illegally in conducting a carting business without having first obtained a license. There is such a rule (*Matter of Savage* v. *Commissioner of Licenses,* 3 A D 2d 717, *supra*); but, once again, there is insufficient support in the record for the contention and it was never a part of the assigned bases for his determination, or of the pleaded answer in this proceeding.

Because the commissioner may be able, with diligent effort, to establish the fact of recent relevant illegal activity by applicant, and the likelihood of such activity in the future, if it should obtain a license, the proceeding should be remanded to him for appropriate action rather than to direct the granting of a license forthwith.

Accordingly, the order of Special Term should be reversed, on the law and on the facts, without costs, the petition granted to the extent of annulling the determination of the Commissioner of Licenses refusing to grant a public carting license to applicant and the proceeding should be remanded, in the exercise of discretion, to the city commissioner for the purpose of reconsidering the application, taking such additional evidence as he may be advised, and redetermining the application in accordance with the views expressed in this opinion.

RABIN, M. M. FRANK, VALENTE and BERGAN, JJ., concur.

Order unanimously reversed on the law and on the facts, without costs, the petition granted to the extent of annulling the determination of the Commissioner of Licenses refusing to grant a public carting license to applicant and the proceeding hereby is remanded, in the exercise of discretion, to the city commissioner for the purpose of reconsidering the application, taking such additional evidence as he may be advised, and redetermining the application in accordance with the views expressed in the opinion filed herein.