52 N.Y.2d 88 (1981)
In the Matter of Hamptons Hospital & Medical Center, Inc., Respondent,
v.
Norman S. Moore, as Chairman of the Public Health Council of the State of New York, et al., Appellants.
Court of Appeals of the State of New York.
Argued November 19, 1980.
Decided January 15, 1981.
Robert Abrams, Attorney-General (Barbara B. Butler, Shirley Adelson Siegel and George D. Zuckerman of counsel), for appellants.
Adlai S. Hardin, Jr., and Stephen J. Blauner for respondent.
Judges JONES, WACHTLER and FUCHSBERG concur with Judge JASEN; Judge GABRIELLI dissents in part and votes to reverse in a separate opinion in which Chief Judge COOKE and Judge MEYER concur.
*91 JASEN, J.
We hold that the Public Health Council had power to re-evaluate an initial determination of public need for establishment of a hospital where its initial determination had not received final approval and that the Public Health Council was not estopped from re-evaluating that determination of public need.
In 1972, the Public Health Council passed a resolution whereby it proposed to approve petitioner's application to establish a 220-bed hospital in Suffolk County subject to certain financing conditions. For the following four years, petitioner encountered difficulty in securing proper financing in compliance with the conditions set forth in the initial determination of public need. Meanwhile, in the summer of 1976, the Bureau of Facility and Service Review of the Department of Health began a review of the public need for all pending hospital projects, including petitioner's, using a substantially different methodology than had been employed in 1972 when the inital determination of public need was made. A preliminary staff report finding no need for petitioner's project was submitted to the Public Health Council on December 16, 1976. Subsequently, the petitioner was invited to and did attend a meeting with a subcommittee of the New York State Hospital Review and Planning Council relative to the public need for the proposed hospital. On February 3, 1977, the subcommittee, concluding that the construction of the facility would result in a surplus of hospital beds in the area, recommended the disapproval of petitioner's application because there was no public need for the project.
*92 The Public Health Council, on April 22, 1977, adopted a resolution that it was "considering disapproving" petitioner's application for establishment and informed petitioner that its disapproval would become final unless a hearing was requested within 20 days. A scheduled public hearing was held in abeyance after petitioner commenced a CPLR article 78 proceeding seeking judgment enjoining respondents from reconsidering the question of public need.
Special Term dismissed the petition, holding that the Public Health Council had the power to reconsider its initial determination of public need. The court noted that the council's initial determination was at best "provisional or interlocutory" and was, therefore, subject to further review, including the application of a newer methodology to the question of public need. The court also held that inasmuch as the provisional nature of the determination was at all times apparent to petitioner, no estoppel could be based upon the council's exercise of its power to reconsider.
The Appellate Division, Second Department, converted the proceeding into an action for an injunction pursuant to section 2801-c of the Public Health Law, concluding that such an action was the proper procedural vehicle by which to test the Public Health Council's power to reconsider its prior determination. On the merits, the court agreed with Special Term that the council had power to reconsider, but went on to hold that the council should be estopped from undertaking such a reconsideration in the instant case. The court then issued a permanent injunction prohibiting the council from re-evaluating public need.
On this appeal, petitioner argues that it was entitled to the injunction by reason of the actions taken by respondents concerning the applications for establishment and construction approval and petitioner's expenditures in conjunction therewith in reliance thereon. For all of these reasons, petitioner urges, the Public Health Council is equitably estopped from reconsidering the question of public need.
The respondents, on the other hand, assert that the 1972 resolution of the Public Health Council was conditioned on petitioner's obtaining proper financing and that, prior to such compliance and final approval, the application for establishment *93 could be reconsidered to determine whether there was public need at the time of final submission for approval.
We agree with the courts below that the Public Health Council had the power to reconsider its initial determination of public need made pursuant to subdivision 3 of section 2801-a of the Public Health Law. The tentative nature of this administrative determination clearly rendered it subject to reconsideration by the agency. (See Matter of Siegel v Mangan, 258 App Div 448, affd 283 N.Y. 557.) The 1972 resolution, on its face, states that it is merely a proposal to approve. Such a proposal does not constitute an immutable determination that there is a public need for the hospital. Indeed, where, as here, considerable time had elapsed since the initial determination was made, a reevaluation of public need would be in order to determine whether there remained public need for such a facility at the time final approval is sought. It must be remembered that the Public Health Council is powerless to approve the establishment of a hospital unless the agency is convinced that there is a public need therefor. (Public Health Law, § 2801-a, subd 3.) Hence, it would seem that reconsideration of its initial determination is consistent with the proper exercise of the council's statutory duty only to authorize construction of necessary facilities. (Cf. Matter of Venes v Community School Bd. of Dist. 26, 43 N.Y.2d 520, 524-525.)
We cannot agree, however, with the Appellate Division, that the desired injunction should issue because the Public Health Council, in consequence of its earlier actions, is now estopped to re-evaluate the question of public need. The doctrine of estoppel is not applicable to the State acting in a governmental capacity. (See 21 NY Jur, Estoppel, § 76, p 110.)[1] The Public Health Council, acting on behalf of the *94 State and the citizenry of the communities affected, is charged with responsibility to determine "the public need for the existence of the institution at the time and place and under the circumstances proposed". (Public Health Law, § 2801-a, subd 3.) In principle it would be unthinkable that the council through mistake or otherwise could be estopped from discharging the responsibility vested in it by legislative enactment.
In practice one could scarcely think of an area of governmental regulation more inappropriate for shackling the freedom of exercise of governmental oversight. In 1976 our Legislature declared a state of emergency in order to assure the availability of funds for medical services because it found that State and local governments were facing emergency fiscal crises. (L 1976, ch 76, § 1.) In 1977, hospital costs accounted for 6.4 billion dollars in public expenditures (State Health Plan, New York State Health Planning Commission, June, 1979, pp 85-86). It requires no documentation to demonstrate the catastrophic economic consequences both to consumers and to providers of health care which might attend the construction of unneeded health care facilities. Runaway health care costs have been the preoccupation of both State and Federal government in recent years, and the extent and character of hospital construction have been recognized as a major component of the economic complex. Whether a new hospital shall be constructed, important as is the issuance of the necessary governmental approval to the proponents and supporters of the proposed hospital, is not an issue involving only the State regulatory agency and the applicants for approval. The economic burden of hospital construction in excess of public need extends through a large economic shed and for a protracted period of time.
When the final disposition of the application for approval is made that disposition and the methodologies of the underlying determination of public need will, of course, be subject to the limited judicial examination which can be obtained in *95 a proceeding under CPLR article 78. But the freedom to make such a final determination cannot be permitted to be constrained by prior, nonfinal, conditional determinations or other actions of the State agencies on any theory of equitable estoppel. (Cf. Matter of Gavigan v McCoy, 37 N.Y.2d 548, 552.)
To the plaint these applicants assert that they have been "misled on" by prior actions of the council and the Department of Health, it suffices to make two observations. In the first place, the applicants and their counsel knew that there had been no approval for establishment and that approvals given in connection with construction were conditional only. It would be naive to suppose that the knowledge of these applicants and their experienced counsel did not include an awareness at least of the probable inapplicability of any doctrine of estoppel. In the second place, to penalize the State agencies because their representatives undertook to provide co-operation and active assistance to the applicants (as contrasted, for instance, with their withholding such assistance and discouraging the expenditure of significant efforts or funds until the grant of final approval) would be unfortunately to chill and dampen the efforts of government servants to assist private citizens in the presentation and processing of applications for required governmental approval.
Having determined that the Public Health Council had authority and responsibility to reconsider its initial tentative finding of public need, and that it was not estopped to do so, we conclude that petitioner is not entitled to an injunction preventing the council from exercising its authority and discharging its responsibility pursuant to law.
We note also that we differ with the proposition advanced by the dissent that it was error as a matter of law on the part of the Appellate Division to have converted this proceeding from one under CPLR article 78 to a proceeding for an injunction under section 2801-c of the Public Health Law. The relief sought by petitioner is an injunction against reconsideration by the Public Health Council of its prior determination of public need for petitioner's establishment and an order directing the council to make a prompt determination *96 approving petitioner's application for establishment. Because there had been no final determination by the council with respect to that application, an article 78 proceeding by way of certiorari or of mandamus to review does not lie. The absence of such a final determination, a prerequisite for relief in those categories, would not of itself, however, necessarily require dismissal of the article 78 proceeding; finality of action on the part of the administrative agency is not the prerequisite to all proceedings under article 78.
An article 78 proceeding may lie in the absence of a final determination where the relief sought is by way of prohibition[2] or by way of mandamus to compel performance by an administrative agency of a duty enjoined by law. Mandamus for such purpose, however, lies only where the right to relief is "clear" and the duty sought to be enjoined is performance of an act commanded to be performed by law and involving no exercise of discretion. (Weinstein-Korn-Miller, CPLR Manual [rev ed], par 32.02, subd [b].) The unavailability of an article 78 proceeding in the present instance inheres in the character of the action petitioner seeks to compel  proscription of any reconsideration of the determination of public need for petitioner's establishment, made conditionally by the council in connection with petitioner's application for prior approval of construction by the Commissioner of Health pursuant to subdivision 2 of section 2802 of the Public Health Law, and approval, on the basis of that prior determination, of petitioner's application for establishment. The relief sought  in essence authorization for additional hospital facilities  involves the exercise of the ultimate judgmental responsibility vested by the Legislature in the Public Health Council.[3] The inately discretionary *97 character of this determination is not altered by petitioner's vigorous assertion that, because of its actions in the past, the council is now constrained to reach but one ultimate conclusion  approval of the application  or by any verbal characterization of the proceeding as one "in the nature of mandamus to compel a nondiscretionary administrative act". The Appellate Division, concluding that the hospital was entitled to the relief sought on the merits, recognized the procedural problem because of the unavailability of article 78 relief and properly converted the action under CPLR 103 (subd [c]). We entertain the proceeding as converted but reach the opposite conclusion on the merits. The availability under article 78 of mandamus to compel performance of a duty by an administrative agency depends not on the applicant's substantive entitlement to prevail, but on the nature of the duty sought to be commanded  i.e., mandatory, nondiscretionary action.
Nor is it internally inconsistent, as the dissent suggests, to find that the controversy before us is "ripe" even though it may not be reviewed pursuant to CPLR article 78. The "ripeness" of a controversy does not turn solely upon the question of which procedural vehicle is appropriate to bring the controversy before the court. Hence, it is not at all inconsistent to state on the one hand that we agree with the dissent that the question in this case is "ripe" in the sense that it is appropriate for judicial examination at this time, but to hold, on the other, that the question should be examined through the procedural vehicle embodied in section 2801-c of the Public Health Law which empowers a court to enjoin "threatened violations" of the Public Health Law.
Nothing in the language of section 2801-c of the Public Health Law forecloses recourse to its provisions to enjoin asserted violations or threatened violations by the Public Health Council or the Department of Health of provisions of article 28 of the Public Health Law. Indeed, the availability of such a judicial remedy pending the issuance of a *98 final determination by the public agencies may be a very useful procedural vehicle for applicants such as petitioner.
Accordingly, the order of the Appellate Division should be modified to the extent of denying the relief sought in the converted application for an injunction pursuant to section 2801-c of the Public Health Law, and, as so modified, affirmed.
GABRIELLI, J. (dissenting in part).
I am in complete agreement with the majority's conclusion that the determination of the council in this instance was subject to reconsideration at any time prior to the final approval of petitioner's application for permission to open a new hospital in eastern Suffolk County. I cannot agree with the majority's decision, however, insofar as it leaves intact that portion of the Appellate Division order which converted the instant litigation from a proceeding under CPLR article 78 to an action for injunctive relief under section 2801-c of the Public Health Law (see CPLR 103).
The Appellate Division believed conversion to be necessary in this case because, in its view, the administrative action in question was not "final" and was therefore not reviewable under article 78. This conclusion was apparently premised upon the language of CPLR 7801, which provides, in pertinent part, that "[e]xcept where otherwise provided by law, a proceeding under this article shall not be used to challenge a determination (1) which is not final" (emphasis supplied). Unfortunately, the Appellate Division failed to appreciate that not all administrative actions that may be challenged under article 78 are "determinations" which are subject to the finality requirement.
The finality requirement for proceedings to challenge certain administrative actions is derived from section 1285 of the Civil Practice Act, the predecessor to CPLR 7801 (subd 1). Like CPLR 7801 (subd 1), section 1285 of the Civil Practice Act imposed a requirement of finality in proceedings to "review a determination". The phrase "review a determination" was then defined in section 1284 as referring to "the relief heretofore available in a certiorari or a *99 mandamus proceeding for the review of any act or refusal to act of a body or officer exercising judicial, quasi-judicial, administrative or corporate functions, which involves an exercise of discretion" (emphasis supplied). This definition clearly excluded from the finality requirement proceedings in which the remedy of prohibition was sought and those mandamus proceedings which were brought to challenge an administrative act not involving "an exercise of * * * discretion" (see 8 Weinstein-Korn-Miller, NY Civ Prac, par 7801.06, at p 78-23). Although the definitional provisions contained in section 1284 were not carried through when the CPLR was adopted, it is apparent that the omission was not intended to produce a substantive change in the existing law and that the finality requirement embodied in CPLR 7801 (subd 1) continues to apply only to proceedings brought to challenge quasi-judicial or discretionary administrative acts (see 8 Weinstein-Korn-Miller, NY Civ Prac, at p 78-24).
The majority's unexamined assumption that petitioner sought to compel the performance of a discretionary act in this mandamus proceeding rests upon a fundamental misunderstanding of the nature of the three basic remedies available under article 78. Historically, the remedy of certiorari was used only as a vehicle for obtaining judicial review of agency determinations made on the basis of evidentiary hearings (see 8 Weinstein-Korn-Miller, NY Civ Prac, par 7801.04, at p 78-14). The familiar "substantial evidence" test was and continues to be the appropriate standard of judicial review where the remedy of certiorari is sought (CPLR 7803, subd 4; see 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 N.Y.2d 176). The second remedy now subsumed under article 78 may be traced to the "ancient and just" writ of prohibition, which was used, in general terms, to enjoin a public officer acting in a judicial or quasi-judicial capacity from taking steps in excess of his jurisdiction (Matter of McGinley v Hynes, 51 N.Y.2d 116, 122-123; Matter of Forte v Supreme Ct. of State of N. Y., 48 N.Y.2d 179, 183; Matter of Dondi v Jones, 40 N.Y.2d 8, 13). Article 78 petitions seeking relief under either of these two remedies are ordinarily fairly easy to distinguish, since *100 the underlying official or agency conduct associated with each remedy is readily identified and classified.
In contrast, the remedy of mandamus, the third broad category of relief now subsumed under the modern procedural vehicle of the article 78 proceeding, has led to some confusion, because it "most often straddled the line between the two old writs" of certiorari and prohibition (Siegel, New York Practice, § 558, at p 778). Indeed, the concept of mandamus really encompasses two distinct types of relief, both of which may be associated for purposes of the present analysis with one of the two ancient remedies discussed above. "[M]andamus to review", which is analogous to certiorari, was developed as a vehicle to permit judicial review of final agency determinations that did not require evidentiary hearings (Siegel, New York Practice, § 561). Such determinations characteristically rest within the sound discretion of the administrative agency and cannot be overturned unless they are shown to be "arbitrary and capricious" (§ 561). On the other hand, "mandamus to compel", which is really only the converse of the remedy of prohibition, by definition cannot apply to agency decisions involving the exercise of discretion, since it entails compelling a public officer to perform an act which he is obligated by law to perform.
Although the distinction between the two different types of mandamus is ordinarily unimportant in modern article 78 proceedings since that statute has eliminated the rigidities of the former writs (see Thornton, Practice Commentary, McKinney's Cons Laws of NY, Book 7B, CPLR 7801, at p 17), the distinction remains of crucial significance in cases such as this, where the courts must decide whether the finality requirement embodied in CPLR 7801 (subd 1) is applicable. As noted above, the former provisions of the Civil Practice Act required finality only where certiorari or the related relief of "mandamus to review" was sought; no similar requirement was imposed where the petitioner sought judicial relief in the form of prohibition or "mandamus to compel" (Civ Prac Act, § 1284). It thus becomes apparent that unless the petitioner seeks "mandamus to review", the equivalent of certiorari for situations not requiring *101 a hearing, the agency decision in question may be challenged under article 78 even though the decision may be characterized as interlocutory.
In this case, petitioner commenced the article 78 proceeding to compel the administrative agency to abide by its prior determination concerning the public need for the proposed medical facility. Such a proceeding obviously does not involve certiorari, since the agency's decision to reopen its determination was not preceded by a hearing and there is no claim that the decision is unsupported by "substantial evidence". Similarly, the proceeding cannot logically involve "mandamus to review", since it is based not upon a claim that the agency abused its discretion in making a determination that was within its power to make, but rather upon the assertion that the agency had a legal duty to act under the doctrine of equitable estoppel. In fact, it was petitioner's position that the agency no longer had any discretion in the matter because it had already made a determination on the issue and had induced petitioner to act in reliance upon its conditional approval. Clearly, a petition framed in these terms states a claim for relief in the nature of "mandamus to compel" a nondiscretionary administrative act.[1] Accordingly, the finality requirement established in CPLR 7801 (subd 1) is not applicable, and there is no logical impediment to the maintenance of petitioner's claim under article 78 (see Matter of Utica Cheese v Barber, 49 N.Y.2d 1028).[2]
*102 The majority's decision to approve the conversion of this litigation from an article 78 proceeding to an action for injunctive relief under section 2801-c of the Public Health Law is particularly objectionable in this situation, because it establishes for the first time that section 2801-c may be used by a health services provider as a vehicle for suing the Public Health Department and the various agencies which operate under its supervision. Prior to this decision, it seemed fairly clear that section 2801-c provided a remedy only against hospitals acting in violation of the regulatory scheme set forth in article 28 of the Public Health Law and the regulations promulgated thereunder (see, e.g., Matter of Cohoes Mem. Hosp. v Department of Health of State of N. Y., 48 N.Y.2d 583). By its decision today, however, the majority has, in effect, ruled that section 2801-c may also be used to challenge the determinations of the Public Health Department and to force that agency to act within the regulatory scheme of the statute. Inasmuch as there is nothing in the language or legislative history of section 2801-c which suggests that the statute was intended to be used in this manner, I am compelled to express my disagreement with the majority's interpretation of the statute, which, unfortunately, sanctions the circumvention of the normal procedures outlined in article 78 for challenging the acts and decisions of administative agencies.
In this connection, it is worthwhile to stress that the finality requirement contained in CPLR 7801 (subd 1) is not a mere "technicality", but rather is the statutory embodiment of the substantive "exhaustion of remedies" doctrine, which is designed to ensure that the courts will abstain from intervening in administrative disputes until the agency has completed its deliberations and the controversy has become "ripe" (see Siegel, New York Practice, § 558, at p 778). Under the doctrine and the applicable provisions of the statute, an applicant must exhaust all administrative avenues and await a final agency determination before coming to court and seeking judicial relief in the form of certiorari or "mandamus to review", although no similar requirement is imposed when the official decision in question is one of those that may be remedied through prohibition or "mandamus *103 to compel". In this case, although the majority has concluded that the agency decision at issue is nonfinal and has further concluded that the decision is among those that must be final in order to be subject to judicial review under article 78, it apparently sees no difficulty in holding that petitioner may nonetheless seek judicial review immediately through an action for injunctive relief. In my view, however, this position is inherently illogical and, more seriously, represents a misuse of the "conversion" device authorized by CPLR 103 to enable a litigant to avoid the substantive "exhaustion of remedies" rule contained in CPLR 7801 (subd 1).
The central difficulty in the majority's analysis lies in its internal inconsistency. If, as the majority contends, the agency decision under review is one subject to the finality requirement of article 78, the observation that the decision does not meet that requirement leads inexorably to the conclusion that the decision ought not be reviewed in the courts at all, at least at this stage of the proceeding. Thus, under the majority's own analysis of the facts, the petition in this case should not have been "converted", but rather should have been dismissed without a full consideration of its merits upon the theory that, since petitioner failed to exhaust its administrative remedies as required, the matter is not yet ripe for judicial review. On the other hand, if, as I have proposed, the decision in question is not among those made subject to the finality rule embodied in CPLR 7801 (subd 1) because it is reviewable through the vehicle of "mandamus to compel", the "exhaustion of remedies" doctrine would present no logical barrier to a judicial review of the merits and the matter may properly be considered in a proceeding brought pursuant to article 78. In short, whether we regard the claim for relief as one sounding in "mandamus to review", as the majority apparently has done, or we regard the claim as one sounding in "mandamus to compel", as I contend we must, the unavoidable conclusion is that the "conversion" below of the proceeding to an action for injunctive relief was wholly inappropriate.
Accordingly, I cast my vote to reconvert the action to an *104 article 78 proceeding and reverse the order of the Appellate Division in its entirety.
Order modified, with costs to appellants, in accordance with the opinion herein and, as so modified, affirmed.
NOTES
[1] Reliance placed at the Appellate Division and by petitioner on our decision in Bender v New York City Health & Hosps. Corp. (38 N.Y.2d 662) is misplaced. In that case we held that, subject to the development of additional evidentiary facts, the doctrine of equitable estoppel might be invoked to permit the filing of notices of claim nunc pro tunc under section 50-e of the General Municipal Law during a period of particular confusion incident to the transfer of operational control of municipal hospitals from the city to the Health and Hospitals Corporation. That holding, addressed to an unusual factual situation, is of very limited application and should not be read as diminishing the vitality of the general rule that the doctrine of estoppel is not applicable to agencies of the State acting in a governmental capacity.
[2] No one asserts that the present proceeding was one in the nature of prohibition; there is no contention that the Public Health Council intends or threatens to act in excess of its jurisdiction.
[3] Matter of Utica Cheese v Barber (49 N.Y.2d 1028), cited by the dissent, is inapposite. That was a proceeding to compel the State agency to act on an application for the issuance of a milk dealer's license. The applicant there did not, as does the applicant here, seek a judicial direction that the administrative agency act in a particular manner substantively favorable to the applicant. What was complained of in Utica Cheese was failure to take any action on a license application, and the relief sought was the performance of a nondiscretionary duty enjoined by law, namely, some action on the license application  one way or the other.
[1] That petitioner may not, in fact, have had a clear legal right to compel the agency to act as a matter of substantive law does not alter the conclusion that its petition stated a claim for article 78 relief in the nature of "mandamus to compel".
[2] I do not take issue with the majority's assertion that the Public Health Council's ultimate determination is essentially discretionary (at pp 96-97) but I would question the pertinence of this observation in the context of the instant dispute. Contrary to the majority's assertions, petitioner did not commence the proceeding to compel the agency to make its ultimate decision in its favor, although a favorable decision is, no doubt, petitioner's underlying aspiration. Instead, as the majority correctly notes earlier in its opinion, petitioner commenced the proceeding in order to challenge the interlocutory decision of the agency to reopen its prior finding of public need. Inasmuch as this discrete decision is itself subject to challenge in a proceeding brought pursuant to article 78 (cf. Matter of Utica Cheese v Barber, 49 N.Y.2d 1028, supra), the discretionary character of any "ultimate" decision that the agency might make on petitioner's entire application can only be regarded as irrelevant.