In the Matter of LEROY MOORE, SR., Appellant, against EARL H. GALLUP, as County Judge of Albany County, et al., Respondents.

Third Department, November 10, 1943.

*LaVerne Orvis,* attorney for appellant.

*Walter L. Collins,* attorney (*Frank Pedlow* of counsel), for respondent County Judge Earl H. Gallup.

*James J. McGuiness, Corporation Counsel* (*Harry A. Allan, Assistant Corporation Counsel,* of counsel), for respondent Chief of Police William J. Fitzpatrick.

*Hun, Parker & Reilly,* attorneys (*Dermot C. Reilly, Desmond F. Reilly* and *Brendan C. Reilly* of counsel), for Forbes Rifle & Pistol Club, Inc., Columbia Rifle Club, Inc., and Karner Range Association, Inc., *amici curiae.*

*Karl T. Frederick* for National Rifle Association of America, Inc., *amicus curiae.*

Schenck, J.  Petitioner, concededly of good moral character, a World War veteran with an honorable discharge, and also holding an honorable discharge from the Navy where he served in 1911 and 1912, in the course of which he received training in the use of small arms, applied to the respondent, the County Judge of Albany County, pursuant to subdivision 9 of section

1897 of the Penal Law, for a license, such as he had possessed since 1937, permitting him to have and carry concealed a pistol. He assigned as the only cause for the issuance of such a license to him his desire to use a pistol for target practice. Accompanying the application for the license were testimonials as to the petitioner's good character. They, along with the application for the license, were referred by the County Judge to the Chief of Police of the City of Albany for investigation, as prescribed by subdivision 9-b of section 1897 of the Penal Law. Without questioning in any way petitioner's good moral character, the Chief of Police, who has since died, recommended that the application be disapproved by the County Judge, who subsequently denied it after having afforded petitioner two personal hearings, neither of which resulted in the presentation of any facts which convinced the County Judge that proper cause existed for the issuance of the license. On the contrary, he felt that a dangerous and unwise precedent would be established if all citizens of good moral character were to be licensed to carry pistols upon a simple showing of a desire on their part to engage in unregulated and unsupervised target practice which would not constitute the " proper cause " prescribed by the Legislature in enacting the statute in question.

The issues raised by the answers interposed by the County Judge and the Chief of Police were brought on at Special Term, where they were referred for hearing and determination to the Official Referee who, after a trial, rendered his report under date of November 16, 1939, containing the following findings of fact and conclusions of law:

### " Findings of Fact.

" First: The petitioner is a person of good moral character and has never been arrested or indicted for any criminal offense.

" Second: The petitioner for many years has owned and lawfully possessed pistols and was in the lawful ownership and possession thereof at the time of his application to the said County Judge, verified January 18, 1939, he having been duly licensed to have and possess the same.

" Third: The petitioner is experienced and skillful in the use of pistols.

" Fourth: The only cause assigned by the petitioner in his said application for the issuance to him of a license was ' target shooting'.

" Fifth: The only purpose and reason of the petitioner for shooting at a target is his personal amusement or entertainment,

and he desires to transport the pistols to some place or places away from his residence to thus amuse or entertain himself.

*" Conclusions of Law.*

*" First:* The ' target shooting ' as practiced and intended to be practiced by petitioner bears no relation to the safety or protection of the life or property of any person.

*" Second:* The use to be made of the pistols by petitioner, as above described, does not constitute ' proper cause ' such as to require the issuance of a license ' to have and carry concealed a pistol ' under the provisions of subdivision 9 of Section 1897 of the Penal Law."

In directing a dismissal of the proceeding, the Official Referee provided in his report that it should be without prejudice to an application by petitioner for a license to have and possess pistols on his premises under subdivision 8 of section 1897 of the Penal Law.

To finding of fact " Fifth " and to the two conclusions of law petitioner filed exceptions. It is from the final order entered in accordance with the report of the Official Referee, denying what under the previous practice would have been a mandamus order, that this appeal has been taken.

Although the Chief of Police, who reported adversely to the County Judge upon petitioner's application, has since died, his successor in that office has properly been substituted as a party hereto (High on Extraordinary Legal Remedies [2d ed.] § 441), especially since the latter has appeared by the Corporation Counsel on this appeal and filed a brief in support of the final order.

While the petition under article 78 of the Civil Practice Act invokes the guarantee of the Second Amendment to the Constitution of the United States, petitioner's brief on this appeal relies not upon those provisions but upon section 4 of the Civil Rights Law which, except for the substitution of " cannot " for " shall not ", is *in ipsissimis verbis* as those of the Second Amendment. Accordingly, authoritative Federal decisions construing the Second Amendment may properly be applied to the State statute in the interest of homogeneity of interpretation. (*Matter of Weiden,* 263 N. Y. 107; *Matter of Cregan,* 275 N. Y. 337.) Obviously, petitioner cannot rest his case upon the Second Amendment which is a limitation upon the exertion of the power of Congress and the national government, but not upon that of the State. (*United States* v. *Cruikshank,* 92 U. S. 542, 553; *Presser* v. *Illinois,* 116 U. S. 252, 265.) Moreover, the

Second Amendment created no right to bear arms, a right which long ante-dated the adoption of the Federal Constitution, having originated in a design to strengthen the national militia, an institution first established by King Alfred. (*Robertson* v. *Baldwin*, 165 U. S. 275, 281; *United States* v. *Miller*, 307 U. S. 174, 179.) Indeed, the main purpose of the Second Amendment was to enable the Federal Government to maintain the public security. (*Presser* v. *Illinois, supra.*) Again, the Supreme Court of the United States has held that the right to keep and bear arms is not infringed by laws prohibiting the carrying of concealed weapons (*Robertson* v. *Baldwin*, 165 U. S. 275, 281, 282), and Judge COOLEY has observed: " The arms intended by the Constitution are such as are suitable for the general defence of the community against invasion or oppression, and the secret carrying of those suited merely to deadly individual encounters may be prohibited." (Const. Law, 2d ed., pp. 282, 283.) So, too, it has been declared that the *arms* to which the Second Amendment refers include weapons of warfare to be used by the militia, such as swords, guns, rifles and muskets — arms to be used in defending the State and civil liberty — but not pistols and such other weapons as are habitually carried by those who, in the vernacular of today, are termed gangsters. (*State* v. *Workman*, 35 W. Va. 367, 373; cf. *People* v. *Persee*, 204 N. Y. 397, 403.) To the same effect are decisions in other jurisdictions where citizens, invoking constitutional guaranties of the right to bear arms, have insisted that they were free to carry concealed weapons. (*Nunn* v. *State*, 1 Kelly [Ga.] 243; *Aymette* v. *State*, 2 Humph. [Tenn.] 154; *State* v. *Buzzard*, 4 Ark. 18; *Andrews* v. *State*, 3 Heisk. [Tenn.] 165; *State* v. *Shelby*, 90 Mo. 302; *State* v. *Keet*, 269 Mo. 206; Notes, L. R. A. 1917 C, p. 60.)

Petitioner's assertion of a vested right acquired by him through the granting of earlier licenses is untenable in the light of this utterance by the Court of Appeals: " A power to grant a privilege to one is inconsistent with the possession on the part of another of an absolute right to exercise such privilege. The requirement that a person must secure leave from some one to entitle him to exercise a right, carries with it, by natural implication, a discretion on the part of the other to refuse to grant it, if, in his judgment, it is improper or unwise to give the required consent." (*People ex rel. Schwab* v. *Grant*, 126 N. Y. 473, 481.)

Petitioner insists that a mandatory meaning is to be ascribed to the provision of subdivision 9 of section 1897 of the Penal Law that " it shall be lawful " for the Magistrate, upon compliance with the conditions prescribed in the statute, to issue a

license to have and carry concealed a pistol or revolver. While the language of a statute permissive in terms may be accorded a mandatory meaning if required by the context (*People ex rel. Comstock* v. *City of Syracuse*, 59 Hun, 258, affd. on opinion below 128 N. Y. 632), each of subdivisions 7 and 8 of section 1897 of the Penal Law prescribes that " it shall be the duty " of the licensing authorities to issue a permit to have and carry concealed a pistol or revolver in the circumstances therein specified; and it is hard to believe that the transition from the peremptory language of subdivisions 7 and 8 to the permissive words " it shall be lawful " in subdivision 9 is open to any interpretation except that the latter phrase was designed by the Legislature to be permissive only. Writing for this court, Justice HENRY T. KELLOGG, preceding an enumeration of many authorities, said: " The instances are numerous in which administrative officers, *empowered* but not expressly *required* by statute to grant licenses and certificates or to make appointments and designations, have been held to possess an absolute discretion not to grant or make them." (*Matter of Barresi* v. *Biggs*, 203 App. Div. 2, 4.)

Subdivision 9-b of section 1897 of the Penal Law discloses a carefully formulated provision that no license shall be issued, pursuant to the section, unless and until an investigation of all statements by or on behalf of the applicant are verified " by the duly constituted police authorities of the locality where the application is made ". Thus is manifested a legislative intent that the local authorities, having in view considerations of public safety and the maintenance of law and order in their community, shall ascertain whether " proper cause exists for the issuance " of the desired license. Necessarily, the solution of that question involves the exercise of discretion on the part of the local officials upon whom the Legislature has imposed the responsibility of making the determination.

It is to be presumed that the refusal of the County Judge to grant petitioner a license was actuated by a desire to guard the public safety and conserve the general welfare. (*People ex rel. Publicity Leasing Co.* v. *Ludwig*, 218 N. Y. 540, 543; *Matter of Larkin Co.* v. *Schwab*, 242 N. Y. 330, 335, 336.) With the conclusions fairly reached by the County Judge, fortified by the recommendation in the report of the chief of police, the courts should not interfere. (*People ex rel. St. Albans-S. Corp.* v. *Connell*, 257 N. Y. 73, 81, 82; *Amundson* v. *Armstrong*, 218 App. Div. 748, affd. 245 N. Y. 533.) " * * * The Legislature has now picked out one particular kind of arm, the handy, the usual and

the favorite weapon of the turbulent criminal class, and has said that in our organized communities, our cities, towns and villages where the public peace is protected by the officers of organized government, the citizen may not have that particular kind of weapon without a permit  *  *  *." (*People ex rel. Darling* v. *Warden of City Prison,* 154 App. Div. 413, 423.) "Local licensing officers can deal better with the situation than the courts." (*Matter of Ormsby* v. *Bell,* 218 N. Y. 212, 217.)

A local law of the city of New York having prescribed that a license for a cabaret should not be issued unless the Police Commissioner deemed the place a safe and proper one to be thus used, and the Police Commissioner having refused to issue a license, partly because of opposition by the Superintendent of Schools based upon the close proximity of a public school, the Court of Appeals, reversing both courts below, said: "The Commissioner's opinion, rather than that of the courts, must control." (*Matter of Agoglia* v. *Mulrooney,* 259 N. Y. 462, 465.)

Where the Mayor of Albany had refused a license for a musical entertainment because the applicant sold liquor on the premises, the pertinent ordinance providing that "the Mayor may issue" such a license on payment of a prescribed fee, the General Term, in this department, said: "The granting or withholding of the license applied for by the relator was, under the provisions of the city charter and ordinances of the common council, a right and power vested in the mayor, to be exercised by him entirely in his discretion." (*People ex rel. Dorr* v. *Thacher,* 42 Hun, 349, 353.)

Under the provision of the former Charter of the City of New York (L. 1897, ch. 378, § 1473) that "the police department is hereby authorized and empowered to grant" a license to a theatre, the Appellate Division in the first department said "that the power vested in the police department to grant or withhold licenses, is discretionary and is not controllable by mandamus." (*Matter of Armstrong* v. *Murphy,* 65 App. Div. 123, 125.)

The Appellate Division in the second department refused a mandamus to compel the Police Commissioner to issue a concert hall license, saying of the authority vested in him by the charter: "Such power is discretionary and not controlled by mandamus." (*People ex rel. Rota* v. *Baker,* 136 App. Div. 7, 8.)

*People ex rel. Ferris* v. *Horton* (147 Misc. 506), upon which petitioner relies, was affirmed in this court (239 App. Div. 610, 613) specifically because a majority of its members felt that the relator therein was clearly entitled to the benefits of the tem-

porary extension of his license accorded under the then existing provisions of subdivision 10 of section 1897 of the Penal Law, as amended by chapter 475 of the Laws of 1924.

The order entered upon the report of the Official Referee should be affirmed, but without costs.

HILL, P. J. (dissenting). The order should be reversed and the prayer of the petition granted. The several statutes which are known collectively as the Sullivan Law, were enacted in an effort to prevent, or make more difficult, the obtaining of weapons by the criminal classes or by those who might use them in connection with crime. If the statute is extended beyond that scope and field, it is unconstitutional and infringes the right of the people to keep and bear arms. The need of the citizens to become proficient in the use of firearms is now brought strikingly to our attention. Six hundred thousand of our citizens in cities have sat in shelters at the top of tall buildings and in the country on lonely hillsides every hour, day and night, for more than eighteen months. Unless the home defense authorities were foolishly and unnecessarily panic-stricken there was some danger, no matter how slight, that a foreign foe would land or disloyal residents would take to the air in a hostile way. Under those circumstances, a man of the type of this petitioner who could shoot with accuracy, would be a more useful citizen than one who, if attacked, could only throw a bootjack at his assailant.

CRAPSER, BLISS and HEFFERNAN, JJ., concur with SCHENCK, J.; HILL, P. J., dissents with a memorandum.

Order affirmed, without costs.