■ In the Matter of AL S. PARKER, Petitioner, v ALDO A. NASTASI, Respondent. — Proceeding pursuant to CPLR article 78 to review a determination of the respondent Judge of the County Court, Westchester County, dated March 11, 1983, which denied, after a hearing, petitioner's application for a pistol license. Determination confirmed and proceeding dismissed on the merits, without costs or disbursements. Petitioner applied for a pistol license pursuant to section 400.00 of the Penal Law. In accordance with the investigatory procedures which are triggered by such an application, petitioner was mandated by statute to supply several sets of fingerprints to the relevant authorities. Specifically, subdivision 4 of section 400.00 provides in part: "the investigating officer *shall* take the fingerprints and physical descriptive data in quadruplicate of each individual by whom the application is signed and verified * * * [O]ne standard [fingerprint] card shall be forwarded to and retained by the division of criminal justice services * * * A search of the files of such division and written notification of the results * * * *shall* be made * * * Thereafter, such division shall notify the licensing officer and the * * * state police * * * of any criminal record of the applicant filed therein subsequent to the search of its files. A second standard card * * * shall be forwarded to [the Federal Bureau of Investigation] with a request that the files of the bureau be searched and notification of the results of the search be made to the investigating police authority * * * [O]ne [fingerprint card] shall be filed with the executive department, division of state police, Albany * * * and the other remain on file with the investigating police authority. No such fingerprints may be inspected by any person other than a peace officer who is acting pursuant to his special duties, or a police officer, except on order of a judge or justice of a court of record" (emphasis supplied). At a hearing conducted before the respondent with regard to the instant application, evidence was adduced which indicated that (1) petitioner was suffering from the skin condition psoriasis, and (2) this condition prevented the police from obtaining an acceptable set of fingerprints from him. The respondent ruled that he could not waive the statutory mandate regarding fingerprints, and on this basis he denied petitioner's application for a pistol license. In our view, the respondent's determination must be confirmed. The instant statute, insofar as it mandates that an applicant for a pistol license be fingerprinted before the license is issued, is similar to other statutes which have been enacted by our sister States (see *Thom v New York Stock Exch.,* 306 F Supp 1002, 1012-1013, affd *sub nom. Miller v New York Stock Exch.,* 425 F2d 1074, cert den 398 US 905). The rationale behind these statutes is clear, i.e., the legitimate and compelling need of governmental and police authorities to (1) ascertain whether a particular applicant for a firearm license has a criminal record and (2) help determine the identity of those who use firearms in the commission of crimes. Accordingly, the courts have consistently upheld these statutes as a valid exercise of

the police power and have rejected numerous and varied constitutional attacks which have been mounted against them (see *People ex rel. Ferris v Horton,* 239 App Div 610; *People v Perez,* 67 Misc 2d 911; Ann., 41 ALR3d 732). Petitioner argues that (1) his inability to supply fingerprint samples was due to illness which he did not cause and over which he has no control; and (2) the respondent's denial of a pistol license is, under the circumstances, arbitrary and capricious. We do not find these arguments persuasive. The Legislature, while acting within its legal province, has mandated that certain conditions precedent be complied with by an applicant before the latter is granted the privilege of legally possessing a firearm. Under those circumstances, whether the legislative judgment "was wise, or whether the requirement will produce hardship in particular instances, are matters with which [the] court has nothing to do" (*Gant v Oklahoma City,* 289 US 98, 102). The court "will not substitute its judgment for that of the legislative body charged with the primary duty and responsibility of determining the question" (*Zahn v Board of Public Works,* 274 US 325, 328). As the Supreme Court of the United States has stated (*Gant v Oklahoma City, supra,* pp 102-103): "An otherwise valid statute or ordinance conferring a privilege is not rendered invalid merely because it chances that particular persons find it * * * impossible to comply with precedent conditions upon which enjoyment of the privilege is made to depend." Although we are sympathetic to petitioner's predicament, any remedial action regarding the strictures of the statute must come from the Legislature, and not the courts. We have reviewed petitioner's remaining argument concerning the alleged violation of his constitutional right to bear arms, and find it to be without merit (*United States v Miller,* 307 US 174; *Engblom v Carey,* 522 F Supp 57). Mangano, J. P., Brown and Boyers, JJ., concur.

Thompson, J., dissents and votes to grant petitioner's application, with the following memorandum: The majority herein holds that the automatic exclusion of all people who are not capable of providing traceable fingerprints because of physical disabilities beyond their control from the opportunity to obtain a firearms permit is a reasonable exercise of the State's power to regulate the possession of firearms. I find that this interpretation of section 400.00 of the Penal Law, the governing statute, draws an arbitrary and capricious distinction which is neither mandated by the language of the statute nor the purpose for which it was enacted. Accordingly, I respectfully dissent. Petitioner, Al Parker, a civil servant for 21 years who presently holds a middle management position, applied for a gun permit. When he submitted to the fingerprint requirement of subdivision 4 of section 400.00 of the Penal Law, it was determined that lesions created by a psoriasis condition had destroyed the ridge details of his fingerprints, so that the prints provided were of no value. Parker stated that his fingerprints had first been taken years earlier when he took a civil service examination, but those prints could no longer be located. He further testified that although his present prints were valueless, police had sufficiently identified him in other ways. Judge Nastasi, interpreting subdivision 4 of section 400.00, stated that his sole and only reason for rejecting Parker's application was the inability to obtain usable prints from Parker, and the statute provided him with no discretion. He was compelled to reject the application. It has been noted that "a validly issued pistol license is an entitlement which should be protected from arbitrary and unreasonable government action adversely affecting its continued enjoyment" (*Matter of Pelose v County Ct. of Westchester County,* 53 AD2d 645, app dsmd 41 NY2d 1008). The determination of a licensing officer to refuse to issue a permit may not be arbitrary and capricious (*Matter of Davis v Clyne,* 59 AD2d 947, mot for lv to app den 44 NY2d 646). Absent an acceptable statutorily authorized reason therefor, an entire group of people may not be excluded from

pursuing the opportunity to obtain permission to carry a weapon (*Kreshesky v Codd*, 89 Misc 2d 439). Subdivisions 1 and 4 of section 400.00 of the Penal Law provide: "400.00 Licenses to carry, possess, repair and dispose of firearms. 1. Eligibility. No license shall be issued or renewed pursuant to this section except by the licensing officer, and then only after investigation and finding that all statements in a proper application for a license are true. No license shall be issued or renewed except for an applicant (a) of good moral character; (b) who has not been convicted anywhere of a felony or a serious offense; (c) who has stated whether he has ever suffered any mental illness or been confined to any hospital or institution, public or private, for mental illness; and (d) concerning whom no good cause exists for the denial of the license. No person shall engage in the business of gunsmith or dealer in firearms unless licensed pursuant to this section. An applicant to engage in such business shall also be a citizen of the United States, more than twenty-one years of age and maintain a place of business in the city or county where the license is issued. For such business, if the applicant is a firm or partnership, each member thereof shall comply with all of the requirements set forth in this subdivision and if the applicant is a corporation, each officer thereof shall so comply. * * * 4. Investigation. Before a license is issued or renewed, there shall be an investigation of all statements required in the application by the duly constituted police authorities of the locality where such application is made. For that purpose, the records of the appropriate office of the department of mental hygiene concerning previous or present mental illness of the applicant shall be available for inspection by the investigating officer of the police authority. In order to ascertain any previous criminal record, the investigating officer shall take the fingerprints and physical descriptive data in quadruplicate of each individual by whom the application is signed and verified. Two copies of such fingerprints shall be taken on standard fingerprint cards eight inches square, and one copy may be taken on a card supplied for that purpose by the federal bureau of investigation. When completed, one standard card shall be forwarded to and retained by the division of criminal justice services in the executive department at Albany. A search of the files of such division and written notification of the results of the search to the investigating officer shall be made without unnecessary delay. Thereafter, such division shall notify the licensing officer and the executive department, division of state police, Albany, of any criminal record of the applicant filed therein subsequent to the search of its files. A second standard card, or the one supplied by the federal bureau of investigation, as the case may be, shall be forwarded to that bureau at Washington with a request that the files of the bureau be searched and notification of the results of the search be made to the investigating police authority. The failure or refusal of the federal bureau of investigation to make the fingerprint check provided for in this section shall not constitute the sole basis for refusal to issue a permit pursuant to the provisions of this section. Of the remaining two fingerprint cards, one shall be filed with the executive department, division of state police, Albany, within ten days after issuance of the license, and the other remain on file with the investigating police authority. No such fingerprints may be inspected by any person other than a peace officer, who is acting pursuant to his special duties, or a police officer, except on order of a judge or justice of a court of record either upon notice to the licensee or without notice, as the judge or justice may deem appropriate. Upon completion of the investigation, the police authority shall report the results to the licensing officer without unnecessary delay." As I interpret the statute, subdivision 1 sets forth the substantive criteria to be used in evaluating each application for a permit. Subdivision 4 provides a procedural means by which to obtain the relevant information or check upon the information provided by

the applicant. Does the inability to provide fingerprints because of a physical disability reflect upon one's moral character, mental health, or prior criminal record? I simply cannot accept that such a physical disability constitutes "good cause" for the denial of a permit (see, generally, *Archibald v Codd,* 59 AD2d 867, mot for lv to app den 43 NY2d 649). There are certainly alternate methods for checking on the identity and background of an applicant other than by use of fingerprints, and for identifying those who use firearms in the commission of crimes. In the absence of any indication in the record that alternate means for obtaining information necessary to evaluate an application would be unduly burdensome or ineffectual, I perceive no "good cause" for the denial of the instant application. The substantive criteria of subdivision 1 simply should not be confused with the procedural techniques of subdivision 4. As an alternative position, it may be argued that the very literal reading of subdivision 4 adopted by the majority has been complied with. Thus, Parker did provide his fingerprints, so the mandate that the investigating officer "shall take the fingerprints" has been satisfied. The statute says nothing of the importance of the discernibility of the prints that are taken. At a time before the statute was explicitly amended to deal with such a situation, a question arose as to what would occur if prints were sent to the Federal Bureau of Investigation with a request that their files be searched and notification of the results be made, and the Federal Bureau of Investigation failed to comply with the request. The opinion of the Attorney-General noted (1970 Opns Atty Gen 15, 16): "The law generally does not require the performance of a useless or futile act. Thus, where, as here, the submission of the fingerprint cards to the FBI with a request for the search of the FBI files would be a useless gesture in view of the current policy of the Bureau not to process such requests, it is my opinion that pistol permits may be issued without the fingerprint cards having first been sent to the FBI. It should be noted, however, that whenever the FBI secures the necessary funds and again is willing to process those requests, pistol permits could not thereafter be issued without the requisite request having been transmitted to the FBI. Section 400.00, furthermore, *does not condition the issuance of a license upon the receipt of the results* of the requested searches. Consequently, a licensing officer may issue a pistol permit without having obtained a report of a search of FBI records. It should be noted, too, that the issuance of the license is a matter for the exercise of discretion by the issuing officer (*Moore* v. *Gallup,* 267 App. Div. 64 [1943], affd. 293 N. Y. 846). Where the licensing authority has reason to believe that a license should not be issued, it is within his discretionary power to refuse to issue the permit; provided, of course, that that discretion is not exercised in an arbitrary and capricious manner. In this regard, *it is significant that the police investigation* required by subdivision 4 of § 400.00 *is not limited to the transmission of fingerprint records to the specified Federal and State agencies.* Those checks are required in addition to any other investigation carried on by the investigating agency. Thus, *the licensing authorities may require more thorough checks by local police agencies as to the background of license applicants,* particularly where it appears that those applicants have resided outside the State of New York, and thus warrants an investigation as to possible criminal convictions outside the State" (emphasis added). In short, I do not believe the position adopted by the majority is mandated by either the language or the purpose of the statute in issue. Accordingly, I respectfully dissent.