[621 NYS2d 121]

# In the Matter of JERALD O'BRIEN, Petitioner, v THOMAS W. KEEGAN, as Justice of the Supreme Court, Respondent.

Third Department, December 22, 1994

APPEARANCES OF COUNSEL

*Jeffrey Chamberlain,* Albany, for petitioner.

*G. Oliver Koppell, Attorney-General,* Albany *(Wayne L. Benjamin* of counsel), for respondent.

**OPINION OF THE COURT**

CREW III, J.

On or about March 31, 1987, petitioner's application for a "carry concealed firearms" license *(see,* Penal Law § 400.00 [2] [f]) was approved by Albany City Court. As issued, petitioner's license (No. C-3-87) was restricted to hunting and target practice only. In June 1989, petitioner applied to amend his license to cover two additional firearms and to transfer his records from the City of Albany to Albany County. It appears from petitioner's application that petitioner also requested that the "hunting and target practice" restriction be removed from his license. Supreme Court (Conway, J.) granted petitioner's application and issued petitioner a new, unrestricted carry concealed license (No. CCA-157-89). Petitioner's application did not set forth the basis underlying his request for an unrestricted license, nor does the record reveal Supreme Court's rationale for granting petitioner's request in this regard. Petitioner's subsequent application to acquire another firearm was approved by Supreme Court (Conway, J.) in February 1990.

Thereafter, on or about December 8, 1993, petitioner again applied to amend his license to delete one firearm from and add two firearms to his license. In conjunction with his application, petitioner requested that he be issued a new license. According to petitioner, he requested a new license because the revised firearms license form "allowed easier listing of registered firearms". The application was forwarded to respondent who, after reviewing petitioner's license records on file in the Albany County Clerk's Office, granted petitioner's application to amend his license and issued petitioner a license (No. CCA-157-89) restricted to hunting and target shooting only. Petitioner objected to this restriction, and respondent met with petitioner to afford petitioner the opportunity to establish "proper cause" for an unrestricted carry concealed license pursuant to Penal Law § 400.00 (2) (f). Respondent subsequently concluded that although petitioner did show proper cause to carry concealed firearms for hunting and target shooting, he failed to establish proper cause for an unrestricted license. Petitioner thereafter commenced this CPLR

article 78 proceeding seeking, *inter alia,* to compel respondent to remove the aforementioned restrictions from petitioner's license.

The issuance of firearms licenses is governed by Penal Law article 400. In accordance with Penal Law § 400.00 (2) (f), a carry concealed license shall be issued only where the applicant has demonstrated "proper cause * * * for the issuance thereof", and pistol licensing officers are vested with broad discretion in ruling on permit applications *(see generally, Matter of Fromson v Nelson,* 178 AD2d 479).

Petitioner's primary contention on review is that respondent lacked the authority to impose the "hunting and target shooting" restriction because Penal Law article 400 does not provide for a restricted, carry concealed license. Although this court previously questioned the policy, apparently adopted by many licensing officers in the State, of imposing upon pistol permits restrictions which are not specifically provided for in the statute *(see, Matter of Mulligan v Williams,* 169 AD2d 280, 283), any doubt as to the licensing officers' authority in this regard was put to rest by the recent Court of Appeals decision in *Matter of O'Connor v Scarpino* (83 NY2d 919). In *O'Connor,* the Court held that "the licensing officers' power to determine the existence of 'proper cause' * * * necessarily and inherently includes the power to restrict the use to the purposes that justified the issuance" *(supra,* at 921). The court went on to note that "[w]ithout such a power to condition, the licensing officer's authority to allow possession of a handgun only for proper cause would be rendered meaningless and the obvious regulatory purpose of the statute would be frustrated" *(supra,* at 921). Thus, it is clear that licensing officers have, in the first instance, the authority to impose restrictions upon carry concealed licenses.

As petitioner correctly notes, however, the Court of Appeals decision in *O'Connor (supra)* does not address the scope of respondent's authority where, as here, an applicant is in possession of a valid, unrestricted carry concealed license and a subsequent licensing officer attempts to overrule the original licensing officer and impose restrictions upon the license in question. In our view, simply amending one's original license application to add or delete a firearm does not trigger the opportunity for another "proper cause" determination. Additionally, absent some evidence in the record that petitioner engaged in conduct subsequent to the granting of his unrestricted license in 1989 which renders him presently unfit to

carry a pistol,* it was an improvident exercise of discretion for respondent to essentially overrule Supreme Court (Conway, J.) by placing restrictions upon petitioner's license *(see, Matter of Leone v Silverman,* 153 AD2d 862). To the extent that petitioner engages in conduct warranting revocation of his license *(see,* Penal Law § 400.00 [11]) or there exists, upon amendment of his license, good cause why such application should be denied *(see,* Penal Law § 400.00 [1]), respondent may act accordingly. In the interim, however, respondent may not impose restrictions upon the license which had already been validly issued to petitioner.

PETERS, J. (dissenting). I respectfully dissent.

Mindful that licenses issued in Nassau and Suffolk Counties and in the City of New York are subject to review upon renewal (Penal Law § 400.00 [10]) and that such periodic review is not statutorily provided for in "upstate" counties *(see, Bitondo v State of New York,* 151 Misc 2d 182, *mod* 182 AD2d 948), it is clear that the process of amendment of a license is the method by which "upstate" licensing officers can ensure that the licensee remains eligible for the license issued.

Penal Law § 400.00 (1), which concerns eligibility for issuance or renewal of a license, specifically requires as follows: "No license shall be issued or renewed pursuant to this section except by the licensing officer, and then only after investigation and finding that all statements in a proper application for a license are true. No license shall be issued or renewed except for an applicant (a) of good moral character; (b) who had not been convicted anywhere of a felony or a serious offense; (c) who has stated whether he has ever suffered any mental illness or been confined to any hospital or institution, public or private, for mental illness; and (d) concerning whom no good cause exists for the denial of the license."

While Penal Law § 400.00 (9) concerns amendment of a license regarding the addition or deletion of weapons, historically courts have permitted a licensee to apply for an amendment to the license to remove restrictions previously placed thereon. Penal Law § 400.00 (9) empowers the licensing officer to exercise his discretion in ruling upon the application for an

---

* In this regard, we reject respondent's suggestion that the mere number of firearms registered to petitioner warranted a restriction upon their use.

amendment. An application for an amendment of a license to merely "add" a new weapon or "delete" a weapon may not necessarily trigger a review of the licensee's continuing eligibility. However, the licensee's responses to questions posed in the application itself* may cause such review even though the response would not cause a revocation of the license pursuant to Penal Law § 400.00 (11)—the limited standard of review found by the majority. Moreover, should the licensing authority find that such license is no longer being used for the intended purpose, it is empowered to revoke the license or change the restrictions thereon (see, 1991 Opns Atty Gen 91-72).

While I agree that a second Judge may not revoke a license issued by a Judge of a concurrent jurisdiction without good cause (see, Matter of Leone v Silverman, 153 AD2d 862), the prior granting of a pistol license does not give the holder a vested right to retain it (see, Matter of Moore v Gallup, 267 App Div 64, 68, affd 293 NY 846). Here, petitioner alleges that the purposes for which he sought amendment were to delete one firearm and add two, and to obtain a "new" license on a more convenient form. His second purpose, in and of itself, authorized a "good cause" review (see, Matter of Demyan v Monroe, 108 AD2d 1004; Matter of Sherwood, 80 Misc 2d 215). As the authority of a licensing officer to impose restrictions is now settled (see, Matter of O'Connor v Scarpino, 83 NY2d 919), clearly the act of imposing restrictions on a previously unrestricted license is permissible provided the action is not arbitrary or capricious and the licensee is given an opportunity to be heard.

MIKOLL, J. P., MERCURE and YESAWICH JR., JJ., concur with CREW III, J.; PETERS, J., dissents in a separate opinion.

Adjudged that the petition is granted, with costs, to the extent that the hunting and target shooting restriction placed upon petitioner's carry concealed firearms license is to be removed and petitioner is to be issued an unrestricted license in this regard.

---

* For example, if an applicant for an amendment to a license responds affirmatively to the question on the application, "Have you undergone treatment for alcoholism or drug abuse?", I am of the opinion that such response would warrant a "good cause" review.